JAMES M. McCLAREN *et al.*, Respondents, *v.* JAMES M. FRANCISCUS, Appellant.

1. *Corporations — Stockholders — Individual Liability — Construction of Statute.* — Under the provisions of section 6, art. VIII, of the constitution of Missouri (Gen. Stat. 1865, p. 40), and section 11, chapter 62, of the General Statutes (Gen. Stat. 1865, p. 328, § 11), which declare and provide for enforcing the liability of each stockholder, over and above the stock by him or her owned and the amount unpaid thereon, in a further sum at least equal in amount to such stock, such liability attaches to those who are actually stockholders when the execution is issued, and not to those who were stockholders when the debt was contracted, and who have transferred their stock in good faith to responsible parties.

2. *Corporations — Stockholders — Individual liability, when it can be resorted to.* — The debt is in the first place the debt of the corporation, and not of the individual stockholder; and the remedy against the corporation must be exhausted and proved ineffectual before resort can be had to the private stockholder.

3. *Corporations — Stockholders — Individual liability — Transfer of stock to irresponsible parties.* — The law is well settled that no member of a corporation can exonerate himself from liability, or defeat the claims of creditors, by transferring his interest to an insolvent person or a bankrupt. The members of a corporation, therefore, who would be liable, if they continued members, to the creditors of the corporation, may still be treated as members if they have disposed of their interest to an insolvent, or with the view of exonerating themselves from their personal responsibility.

*Appeal from St. Louis Circuit Court.*

At the October term, 1868, plaintiff below filed a motion against defendant and several others, jointly, alleging that on March 16, 1868, they recovered a judgment against the "St. Louis Museum, Opera, and Fine-Art Gallery," averring that it is a corporation incorporated and organized under the laws of this State in regard to corporations; that the judgment is unsatisfied, and an execution had been issued against the property of the corporation, and no property could be found whereon to levy; that appellant and the other defendants below are and were stockholders in said corporation at the time of the incurring of the indebtedness on which said judgment was rendered. Wherefore they asked for an execution to issue on said judgment against said stockholders. At the trial the motion was dismissed as to all of the defendants except the appellant.

The following facts appeared in evidence. The respondents, McClaren and Robison, were original subscribers for twenty shares of stock in the company, and Yeates and Henderson were original subscribers for twenty-eight shares. Respondents, McClaren and Robison, made a contract with the company to make a plan and drawings for a building for it, and perhaps some other services, for which they charged $3,500, and agreed to take stock in the company therefor to the amount of $2,000, the balance to be paid in money. They subscribed for the $2,000 of stock on the company's stock books, and had the certificates therefor issued to them. Their work was completed by or before October 1, 1866; and the indebtedness of the company to them had then accrued. In October, 1866, respondents sold their twenty shares of stock to Yeates and Henderson, and were paid for it, and transferred the stock to Yeates and Henderson by assigning and delivering the certificates to them. Yeates and Henderson, in November, 1866, sold these twenty shares of stock, together with the twenty-eight shares which they held by their original subscription, to appellant, received pay, and transferred the stock to appellant by assignment and delivery of the certificates to him. Appellant then gave up to the secretary of the company the certificates so assigned to him, and got him to issue a new certificate in lieu thereof to him, in December, 1866. There never was any transfer of any of this stock on the stock book or any book of the company. Appellant, instead of holding the certificates with the assignments on them, took a certificate to himself in place of them. On the 14th day of January, 1867, appellant sold the forty-eight shares of stock thus purchased to George De Baun (the witness), and transferred it to him by assigning and delivering the certificates therefor to him, and they proved that from and after said 14th day of January, 1867, De Baun had been and still was the owner and holder of the stock. The stock was all finally-paid-up stock, and was purchased and sold by the different parties as such.

On the trial De Baun testified: "The building burned down after the stock was transferred to me, and a judgment of $1,000 could not have been enforced at the time by execution against me, nor since. I gave Franciscus my note at ninety days for this

stock, and intend to pay it when I can. Since I became insolvent Franciscus loaned me money and traded with me. Franciscus knew I was insolvent when he sold this stock to me."

Upon this evidence the cause was left with the court, when judgment was given for plaintiffs. Defendant asked for a new trial, which was refused, and he appealed to the general term of the St. Louis Circuit Court, where the judgment was affirmed. The case now comes here on appeal. The other material facts appear in the opinion of the court.

*Sharp & Broadhead*, for appellant.

I. The first point prominently presenting itself by the record is that the liability sought to be enforced does not exist against the stockholders of the "St. Louis Museum, Opera, and Fine-Art Gallery." It nowhere appears that such company (if a corporation at all) was created after the taking effect of our present constitution, or whether it has or has not been in existence for twenty years. There is no averment on that subject; there is no proof on the point; indeed, there is no evidence proving it to be a corporation at all. The present constitution (art. VIII, § 6, p. 40) for the first time imposed, or required legislation to impose, the liability in question. The law of 1865 (Gen. Stat. 1865, p. 328, § 11) provides for the enforcement of this provision of the constitution. It applies only to corporations created under the present constitution; it does not and cannot create and impose this new and additional liability on the stockholders in corporations existing prior to the constitution and law imposing it. (Wheeler v. The Frontier Bank, 23 Me. 308–10; Middletown Bank v. Reef, 3 Conn. 135, 139.)

II. Franciscus was not the holder or owner of stock therein at such a time to be liable for the debt sought to be enforced. The persons who are stockholders at the time the debt is contracted are the ones liable for such debt. The provision of the constitution is that dues from private corporations shall be secured by such means as may be prescribed by law, but in all cases each stockholder shall be individually liable, over and above the stock by him or her owned and any amount unpaid thereon, in a

further sum at least equal to the amount of such stock." The provision of the statute is that if execution shall have been issued against the property of a corporation, and there cannot be found property whereon to levy such execution, then execution may be issued against any one of the stockholders to an extent equal in amount to the amount of stock by him owned, together with any amount unpaid thereon; providing, however, that there shall first be a suit, judgment, and execution against the corporation, and a return not satisfied. All of the provisions of this constitutional liability, and of the sections of the statute for its enforcement, seem to be sufficiently clear of themselves; but a question is raised here as to who are the stockholders who are made liable for a debt contracted by the corporation. Is it he who is a stockholder or owner or holder of stock when the debt of the corporation is contracted or made, and who gets the benefit of it, and under whose management it was made, and on the credit of whom and on the faith of whose liability as a stockholder the creditor gives credit to his company? Or is it he who had once been a stockholder, before the debt was created or contracted, but who had ceased to be, and had no further connection with the company before the debt? Or is it he who was not a stockholder or in any way connected with the company at the time of the transaction, or at any time before, but who purchased stock long after the debt had been contracted and had become due, and could not possibly have had any agency in the matter? Plaintiffs and their counsel, when they commenced this proceeding and until their own evidence forced them from it, seem to have thought it was the stockholder at the time the indebtedness was created who was liable for it. For in their application, which is the basis of this cause, they aver that Franciscus was a stockholder at the time of the incurring of the indebtedness to plaintiffs, and still is such; and it was after their evidence clearly proved that he was not and never was a stockholder until after the debt was contracted and became due that they claimed that the subsequent purchaser of their stock was liable to them for a debt created by them and their associates. It was on this theory that the judgment herein was recovered. The language of the

constitution and statute does not admit of the construction forced upon them in this case, and it is doing violence to them to so construe them. Indeed, it is at least very questionable whether it would be competent for the Legislature to enact that one man should pay the debt of another in this way, which he has never contracted to pay, merely because he has subsequently purchased the stock of him who contracted it or was liable for it. .(23 Maine, 308.) This liability is not a penalty; it is a *quasi* partnership liability, limited as to extent and mode of enforcement. All the authorities hereinafter referred to, and indeed all of the decisions, so hold. Suppose ten persons are partners; they contract debts; one afterward sells his interest in the assets and effects of the firm to defendant, and is paid in full for it: the original partner, at the time the debt was created, is liable for such debts, and, even if he has expressly contracted for his vendee to pay them and hold him harmless therefrom, he is still liable to the creditor, and his vendee is only liable on the contract of indemnity to him. In the absence of an express contract, there is no sort of liability on the vendee, even to him; and the creditors of the company cannot, without their consent, be turned over to the vendee, who may be insolvent, and the contract and liability of their debtor impaired or released. The same principle applies to the indebtedness and liability here: A man assigns a non-negotiable note. What is the legal effect of his assignment? The holder must sue, get judgment, execution, and return of *nulla·bona*. This proves the insolvency and fixes the state of facts on which the assignor must respond on his liability incurred by the assignment; not that his liability was created on the insolvency of the maker being established by the return of the execution *nulla bona*, but it is thereby established that the liability incurred by the contract of assignment was matured and must be met. So with the question before us. The plaintiffs subscribed for and owned stock in the company. While such owners, they and their associates contracted this debt to themselves, and their common property got the benefit of it. They sue the company for the debt, get judgment and execution — returned *nulla bona*. It is not the simple return of the execu-

tion which creates the indebtedness or liability of the stockholders, but by the return it is established in the mode pointed out by the statute that the liability contracted by the stockholders in creating the debt is mature and must be met. This plain and only safe and sensible view is amply sustained by the best authorities under similar statutes. (Moss v. Oakley, 2 Hill, 265–70.) Judge Bronson then goes to the bottom of the true principle involved in such statutes. There the charter made all of the stockholders liable for debts of the corporation ; but, before they should be proceeded against, suit must be brought and judgment obtained against the corporation, and execution thereon against it must be returned unsatisfied (this is the same as our constitution and statute, except that by our law the liability is to a limited extent); the holders of stock are made liable for the debts, but pro ceedings must be had against the corporation first, and execution returned *nulla bona*. The question was, what holders of stock are they that are liable for the debts not made on execution—such as were stockholders at the time of the judgment and execution, or those who were such when the debt was created? The learned Judge says that, without doing any great violence to the language of the statute, it might be literally construed either way, but that little stress was to be laid on the wording of the statute. Its object was to require stockholders to manage the business of corporations so as not to contract debts beyond the company's means to pay, and with this view to keep before them the fact of their liability for their management and to pay for their mismanagement.

Thus, a purchaser of stock often has not the means of knowing the condition of the company until after he becomes a member, while the owner of the stock when the debt is created may know that debts are contracted by him, his agents and associates ; and his assignee of his stock must look to debts created after his purchase. This secures creditors, for whose benefit the statute was made. They gave credit to the corporation on the faith of the holders of the stock at the time of their solvency. After the credit is thus given, the liability cannot be shifted, to perhaps less responsible persons, by a sale of the stock after the credit is given,

to the prejudice of creditors. The holders of stock at the time of the credit given, and they alone, are liable. This is the true meaning and sense of this provision. (See also Adderly v. Storm & Bailey, 6 Hill, 624, to the same effect; Young v. New York and Liverpool Mail Steamship Co., 15 Abb. 69.) In Tracy v. Yates, 18 Barb. 152, 157, the statute provides that stockholders should be individually liable for all debts of the company to an amount equal to the amount of stock held by them, etc. (This is broader than our statute and constitution — the stockholders shall be liable for all debts of the company; no limit as to when or by whom contracted — all debts.) The court held that it must be construed, and it was manifestly right that it should be construed, to hold stockholders liable for debts contracted while they were holders of stock, but not for debts contracted before they were stockholders; and further, that the section of the statute providing that "no suit should be brought against a stockholder who should cease to be one, for any debt, unless commenced within two years from the time he ceased to be a stockholder," clearly settled that the liability was intended to be and was only for such debts as were contracted while the party proceeded against was a stockholder, etc.

Now, in connection with this, our statute (Gen. Stat. 1865, p. 370, § 13) provides substantially and almost in words the same thing, which the court says clearly settles the question. This is the only true construction of our statute. It was borrowed from the legislation and statutes of New York, where a uniform current of decisions gives this construction.

The ruling of the court below is against all reason and the weight of authority, as we have shown. But not only this; if sustained, it is against public policy, and fatal to the best interests of the State. For example: A railroad company, a corporation to work and develop the mining interests, or for any other business enterprise, is formed; capitalists at home or abroad propose to invest their capital here in such pursuits; they have confidence in the undertaking; are willing to invest their money in stock among us, and risk the amount so invested in stock, and an additional amount equal to the amount of such stock, for or on account of

the debts, business, and transactions of the company, after they
so engage in it (as in other States under similar laws they would
be liable); but they are met by the startling assurance that our
court holds them beyond this — liable not only for liabilities con-
tracted while they are members of the company, but also for what-
ever may have been done heretofore by others, of which they can
not know, and which perhaps no examination by them can truly
discover; for the books and papers may not truly show it. They
will not assume blindly such liabilities; they are driven from us
to other fields of enterprise. Our State suffers and languishes
under such a suicidal course. The statute neither requires nor
authorizes it.

*Cline, Jamison & Day*, for respondent.

In determining this case it is necessary to ascertain who are
the stockholders of a corporation within the meaning of the law,
and at what time they must be the owners of the stock in order
to render them liable to a creditor of the company in event of its
failing to pay on execution. In this case the debt had accrued
about the time the stockholder purchased the stock, and some
days before the title was vested in him by a legal transfer on the
stock books of the company; and before the execution was issued
he had sold his shares of stock to De Baun, but they were never
transferred on the books of the company; and here is the rub.
They still stood in the name of Franciscus at the only place one
would go to learn who were the stockholders in the corporation.
He permitted himself to be held out to the corporation and to the
world as the owner of forty-eight shares of the capital stock
of the corporation; and, even if George De Baun was solvent, and
the attempted sale of the stock to him had been in good·faith,
and not made for the purpose of avoiding the statutory liability
of an owner, we cannot see on what principle of legal reasoning
he can escape liability in this proceeding.

After the return of the execution, the plaintiff resorted to the
books of the company to see who was liable to him for his money,
and found forty-eight shares of the capital stock were held by
Franciscus; and upon this evidence of title he filed his motion

against him. Now, why should he not have execution against him? By section 11, ch. 62, Gen. Stat. 1865, p. 328, it is provided as follows: "If any execution shall have been issued against the property or effects of a corporation, and if there can not be found whereon to levy such execution, then such execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; provided," etc. Section 12: "The clerk or other officer having charge of the books of any corporation, on demand of any officer holding an execution against the same, shall furnish the officer with the name, place of residence (so far as to him known), and the amount of liability, of every person liable as aforesaid."

From the simple reading of the statute, it is plain that the time the liability attaches to the stockholder is when an officer holds an execution against the company and is unable to find property to make the same; and section 12 directly indicates where the officer shall go to learn who are such stockholders as are liable to pay the debt. He is to call upon the officer of the company having charge of the books of the company, whose duty it is made to give the officer a list of the stock-owners and the amount they are liable for. Now, could this be done if the record of the company is to be controlled by outside attempts at alienation of stock, or could the officer ever inform the plaintiff in the execution against whom he could file his motion?

Where stock was transferred on the books as collateral security, and the debt was paid, and a power of attorney given to re-transfer the stock to the pledgor, and, after this had been done, and before any transfer had been made, the debt was contracted for which the company had been sued, "the court held that although the party had but the mere formal legal title, yet he was liable as stockholder; and the court says he could attend the meetings, vote on the stock, receive and receipt the dividends, and why not bear the burthens of a stockholder? Until the transfer was made on the books of the company, he continued to be a stockholder within the meaning of the statute. If we depart from the terms of the law and inquire into the equities which may exist between

the stockholder and some third person, it cannot fail to embarrass creditors in seeking a remedy for wrongs done by the corporation. If the creditor must look beyond the legal title, he can never know against whom to issue." (Adderly v. Storm, 6 Hill, 624.) The persons in whose names the stock stands upon the books of the company should be held liable, according to every principle of justice, as they alone are entitled to manage the affairs of the company, and are held out to the world as the persons against whom those who credit the corporation can resort in event of the corporation becoming insolvent.

In Worrell v. Judson, 5 Barb. 210, the defendant had sold his stock and transferred his certificate to the vendee, but the stock had not been transferred on the books of the corporation, but still stood in the name of the defendant, and it was held he was liable as a stockholder for a debt contracted by the company. In Rosefelt v. Brown, 11 N. Y. 148, the Court of Appeals of New York held that where stock had been transferred on the books of the company as collateral security for the payment of a note, the pledgee was liable as stockholder for the debts of the company, and that the court below properly rejected proof showing that the transfer was merely by way of pledge, on the ground that the absolute title, as shown by the books of the corporation, could not be explained, modified, contradicted, or controlled by any agreement between the parties, and that the creditors of the corporation could not be required to look beyond the stock record of the company to ascertain who were the owners thereof, and that any other rule would work a great injustice to the creditors of a corporation, and tend to render the statute inoperative, as the creditor could never tell whom he could proceed against to collect his debt in event of the insolvency of the corporation. (Stanley v. Stanley, 13 Shep. 191.)

And even if the transfer of the stock as made, without being entered on the transfer books of the company, was a legal transfer and caused Geo. De Baun to be a legal stockholder in the company, still for another reason the transfer could not be made by Franciscus to De Baun, on account of the insolvency of De Baun. "However strictly the personal responsibility imposed

30—VOL. XLIII.

upon the members of an incorporated company may be construed against creditors, there is one point which is very clear; and that is, that no member can exonerate himself from his liability and defeat the claims of creditors by transferring his interest to a bankrupt. (Ang. & Ames on Corp. § 623, ed. 1866; Morey v. Clark, 17 Mass. 330.)

WAGNER, Judge, delivered the opinion of the court.

Plaintiffs recovered judgment against the "St. Louis Museum, Opera, and Fine-Art Gallery," a corporation duly incorporated by the laws of this State under the statutory provision entitled "private corporations." Execution was issued on said judgment and returned unsatisfied, whereupon plaintiffs moved that an execution issue against the defendant, Franciscus, he being at the time a stockholder of the said corporation. This motion was sustained, and the defendant appealed.

It appears from the record that at the time the debt was contracted Franciscus was not a shareholder in the corporation, but became so subsequently, and was and continued to be one up to the time the execution was issued and returned, under circumstances which will be hereafter referred to. The principal question, therefore, is whether the individual liability of the stockholder, imposed by the constitution and the law, attaches at the time the debt is created or at the time the execution is sued out. Individual-liability clauses in acts of incorporation are of no unusual occurrence, and they exist in England and in most of the States of this Union. The law under which this proceeding was had was framed in obedience to a positive requirement of the constitution, and is now to be construed for the first time as regards the liability of different stockholders.

By section 6, article VIII, of the constitution, it is provided that dues from private corporations shall be secured by such means as may be prescribed by law, but in all cases each stockholder shall be individually liable, over and above the stock by him or her owned and any amount unpaid thereon, in a further sum at least equal in amount to such stock. By General Statutes 1865, p. 328, § 11, it is enacted: "If any execution shall

have been issued against the property or effects of a corporation, and if there cannot be found whereon to levy such execution, then such execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon : *provided*, *always*, that no execution shall issue against any stockholder except upon an order of the court in which the action, suit, or other proceeding shall have been brought or instituted, made upon motion in open court, after sufficient notice in writing to the persons sought to be charged ; and upon such motion such court may order execution to issue accordingly."

Section 12 makes it the duty of every clerk or other officer having charge of the books of any corporation, on demand of any officer holding any execution against the same, to furnish the officer with the name, place of residence (so far as to him known), and the amount of liability, of every person liable as aforesaid.

The language employed in the constitution and the eleventh section of the statute is essentially the same, and in each case the words seem to be used in the present tense, and apply to the actual stockholder when the execution is issued. This is the natural and fair construction, and ought to prevail, unless it is strongly inferable or can be clearly shown that a different meaning was intended. It is argued by counsel here that it was intended to make those stockholders liable who owned the stock when the debt was contracted ; that they, in fact, incurred the liability, and that the responsibility cannot be shifted from them and placed upon others who were not interested in the corporation at that time ; that the credit may have been given on account of the known ability of the persons owning the stock, and it would be an act of impolicy and bad faith to release them and compel the creditor to seek satisfaction from persons who had subsequently bought the shares, and might, moreover, be insolvent. If the act is open to construction, these reasons are doubtless entitled to consideration; but there is also another side to this view of the subject.

A statute in New York incorporating a company declared that the stockholders of the corporation should be liable, jointly,

severally, personally, for the payment of all debts or demands contracted by said corporation or their authorized agent or agents; and any person having any demand against the corporation might sue any stockholder, director or directors, etc. The Supreme Court, in construing this statute, held that the suit could be brought only against such as were stockholders when the debt was contracted, and not those who became so afterward. (Moss v. Oakley, 2 Hill, 265.)

Although the phraseology of the New York law is somewhat different from the language used in our statute, yet it may be conceded that the principle is the same. In the opinion in Moss v. Oakley the court said that it must be admitted that the statute might be so construed, without doing any violence to the language, as to make it apply to those persons who were stockholders at the time suit was commenced; still, they thought that it was the intention of the law-makers to charge those persons who were stockholders at the time the debt was contracted, and not those who became stockholders at any subsequent period. This case was followed in two or three other instances, till finally the matter was taken to the Court for the Correction of Errors and Appeals, where the above doctrine was disapproved, and the rule was announced that the provision in the act of incorporation rendering the stockholders liable for its debts was applicable to persons owning stock when the suit was brought, and not to those who were stockholders when the debt was contracted. (McCulloch v. Moss, 5 Denio, 567.) I have been unable to find that the rule contended for ever obtained any standing elsewhere than in New York, and even there it has been disclaimed and overruled in the highest tribunal. In Massachusetts there has been one uniform line of decisions on the question. By the statute it was enacted that whenever any execution should issue against any manufacturing corporation created, and such corporation should not, within fourteen days after demand made upon the president, treasurer, or clerk of such corporation, by the officer holding the execution, show to him sufficient real or personal estate to satisfy and pay the sums due on such execution, the officer should serve and levy the same upon the body or bodies,

and real or personal estate or estates, of any member or members of such corporation. It was held that a stockholder who ceased to be such before the execution was not liable. The court say: "The provision is, that a creditor in a certain case may levy his execution upon the body or estate of any member of the corporation. This must be understood of such as were members at the time of the commencement of the action, and of those only." (Child v. Coffin, 17 Mass. 64; Bond v. Appleton, 8 Mass. 472.)

In Connecticut, under a like statutory provision, where an action of assumpsit was brought, after the insolvency of the corporation for money advanced on its notes, against those who were members at the time the debt was contracted, but had transferred their stock before the commencement of the suit, it was decided that the defendants were not liable, but that the action must be prosecuted against those who were stockholders at the time of the institution of the proceedings. (Middletown Bank v. Magill, 5 Conn. 28.)

The same construction is held on this class of liabilities in England. The thirty-sixth section of the company's clauses (Consolidation Act, 8th and 9th Vict., ch. 16) enables execution to issue against any of its shareholders, if the property or effects of the company prove ineffectual; and the courts hold that the persons liable are shareholders at the time of the sheriff's return of *nulla bona*. (Nixon v. Green, 11 Exch. 550.)

The words employed are general in the constitution: "In all cases each stockholder shall be individually liable." In the statute they are: "If there cannot be found whereon to levy such execution, then such execution may be issued against any of the stockholders." In the first place, the debt is the debt of the corporation, and not of the individual stockholder; the remedy against the corporation must be exhausted and proved ineffectual before resort can be had to the private shareholder. A corporation is a permanent body, with the qualities of succession and perpetuity; its members may die, or be changed by transferrence of stock, but it remains the same. The Legislature and the constitution intended that the property of this body should at all times be liable for the debts contracted by it. For this

purpose the corporation was made liable to be sued, and, lest at any time the corporation should fail to pay its debts, a remedy was applied against that tangible body, which at all times must be appended to it, namely: the members. Now, the inquiry is, what members? It is clear that the law contemplates the members of a fluctuating body; one that may be daily and even hourly changing, though the corporation, as such, is to remain permanent. But still the tangible body, though perpetually shifting, must be equally permanent with the corporation, since there must be stockholders so long as there is stock; and, of course, there must always be individuals to be called upon in the case of a failure of the company to pay their debts. The mode by which these changes take place is easy — a simple transfer on the books passes the title and effects a substitution of parties. It invests one person with all the rights, privileges, and immunities of membership; causes another to cease to be a member, and deprives him of all right thereafter to act or be heard in the management of the affairs of the company. And yet, if the theory of the defendant's counsel is correct, the latter is, to all intents and purposes, in relation to their creditors who became such while he was a member, a member still, though not as to any right to participate in the profits, but merely to share the loss. He becomes a victim to others — immolated at the mercy of the corporation and its creditors. In vain he appeals to the creditors to secure their debts while corporate property remains in abundance; and equally vain is it for him to appeal to the justice of the members of the corporation. He has no power to coerce, to advise, to participate in the management or share in the profits, if the business is successful; but he has the consolation of being allowed to pay if unsuccessful through mismanagement, imprudence and dishonesty, or disaster. Possibly the Legislature may have intended to produce such a state of things, but I am not sufficiently credulous to believe it. Corporations do their business in part, at least, upon credit; and, as by law the stockholders as well as the corporation are made liable to be sued for the debts, it was certainly contemplated that those members should be liable who were such at the time the default was made by the principal

body. There is nothing unfair or unreasonable in this. It was not intended that a man who had purchased a share in a company should continue to be bound after it should pass beyond his control into the management of others.

In Middletown Bank v. Magill, *supra*, the judge, in delivering the opinion of the court, puts this illustration: "But further; suppose we should examine a little more particularly this supposed equality, since it is claimed the proviso is to receive its construction from it? At the proper season materials are purchased on credit sufficient to enable the corporation to carry on their concerns for a longer or shorter period — suppose a year. A., a member, immediately after transfers his interest to B., who is a member at the time. A suit is brought to recover the price of such materials. If these are worked up, B. is entitled to his share of the profit of them; and if not, he, as a corporator, has an interest in them. A. has no more interest in it than any other stranger. Should a profit be made, B. shares in it. Should the manufactures derived from these materials be sold on credit, B. has an interest in it; or should they be sold for cash, as a corporator he is entitled to his proportion. And yet A., it is claimed, is bound to pay the debt, though B. is much the most responsible man; for it will be perceived that the argument does not proceed upon the ground that either the company or its members are insolvent or at all unable to pay such debts. Such a construction would, in a case not unlikely to happen, defeat the creditor of his debts. The members who are such at the bringing of the action may all be responsible, and even the corporation abundantly solvent, yet the corporation property may not be within the reach of the process of law, and those who were members at the time the debt was contracted be entire bankrupts."

But it is argued that, if it should be held that the actual stockholders only are liable who are such at the time the execution is issued, creditors will be defeated and defrauded out of their just demands by transfers being made to irresponsible parties. I apprehend there can be no difficulty on this question. The law is well settled, the point is very clear, that no member can exonerate himself from liability or defeat the claims of creditors by trans-

ferring his interest to an insolvent person or a bankrupt. The members of a corporation, therefore, who would be liable, if they continued members, to the creditors of the corporation, may still be treated as members if they have disposed of their interest to an insolvent or with the view of exonerating themselves from their personal responsibility. The authorities all concur in this. (Ang. & Ames on Corp. § 623.)

The facts in this very case furnish an illustration of the foregoing rule. Some time previous to the issuing of the execution, Franciscus had sold his stock to De Baun, whom the evidence clearly proves to have been insolvent at the time of the sale. It is true there was no transfer made on the books; so there could be no dispute about fixing the liability of Franciscus. But had the transfer been regularly made, it would have amounted to the same thing, as De Baun's insolvency would have still left Franciscus responsible.

That we have arrived at the proper construction, under the constitutional provision and the statutory law, is to my mind perfectly clear and apparent, and aid is directly derived by referring to the past legislation of the State. In the Revised Code of 1855 (§ 13, p. 372), in regard to the personal responsibility of stockholders, the liability is expressly confined to the debts of the corporation contracted during the time of the stockholder's ownership of the stock. There was no doubt, under that law, as to what particular stockholder was liable. Had the same liability been intended in the revision of the statute, the provision would have been preserved or words of like import would have been used. But instead of that we see the phraseology totally changed and a grammatical arrangement employed requiring an entirely different construction. The section, as now embodied in the statute, comports with the enactments in other States and in England as designating the stockholders liable; and, as we have seen, there is remarkable harmony existing in the decisions on the question.

After an attentive examination of the whole subject, I have discovered no error in the record, and think the judgment should be affirmed. Judge Bliss concurs; Judge Currier not sitting, being interested as counsel in a like question.