PHILIP B. VEILLER, Assignee of EDGAR TUCKER, Appellant, *v.* JOHN B. BROWN and others, Respondents.

*Liability of stockholders to creditors — not discharged by a transfer of the stock, unless it is a bona fide sale.*

To relieve a former stockholder of a manufacturing corporation from the liability to creditors imposed by the statute, it must appear not only that the stock has been transferred to another on the books of the corporation, but also that such transfer was made in pursuance of an actual *bona fide* sale, without any secret understanding or trust in favor of the transferrer.

Several stockholders, apparently acting in concert, joined in transferring their stock on the books of the corporation to a person, of no pecuniary responsibility, who was in the employment of one of them, at a time when the corporation was, to their knowledge, financially embarrassed.

*Held,* that there was no such actual *bona fide* sale of the stock established, as to relieve the transferrers from their statutory liability to the creditors of the corporation.

Appeal from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

By the judgment it was "ordered and adjudged that the complaint in this action be dismissed as against the said defendants John B. Brown, Philip H. Brown, John M. Brown, Matilda G. Brown, W. J. Emmet and Cornelia Gilman." The case was twice tried. On the first trial the complaint was dismissed. The plaintiff then applied for and obtained a new trial on the ground of newly discovered evidence. On the second trial the complaint was again dismissed.

*Everett P. Wheeler,* for the appellant. It is well settled that a stockholder, who is liable to make good to a company an unpaid balance upon the capital stock held by him, cannot relieve himself of this liability by a transfer, for a nominal consideration, to some irresponsible party, when the company is embarrassed. (*Nathan* v. *Whitlock,* 9 Paige, 152; *McLaren* v. *Franciscus,* 43 Miss., 469; *Costello's Case,* 2 DeG., F. & J., 302; *Hyam's Case,* 1 id., 75; *Weston's Case,* E. L. R., 5 Ch. App., 614; *Richardson's Case,* id., 19 Eq. Cas., 588; *Payne's Case,* 9 id., 223; *Hatton's Case,* 31 L. J. Ch., 340.)

*R. S. Emmet* and *W. J. Marrin*, for the respondents.

DANIELS, J.:

This action was brought against the respondent defendants, to charge them with a personal liability for the debts of the Kings County Manufacturing Company. This company was formed under the general manufacturing laws of the State of New York, and a certificate of its incorporation was filed in the office of the secretary of State on the 18th of April, 1868. The defendants became shareholders by receiving certificates of stock from the corporation itself in the early part of the year 1869, and they all continued to own their stock, certainly until the month of January, 1870. At that time, as the evidence shows, the defendant, William J. Emmet, sold his stock to Henry Furbish, the president of the company. According to his testimony, which was not controverted in the case, he sold and delivered it to Finbist *bona fide* and for a valuable consideration, and the fact was so found by the court before which the trial was had. This, under the statute, was sufficient to relieve Emmet from personal liability for the debts of the corporation which were in fact afterwards contracted. (*McCullough* v. *Moss*, 5 Denio, 566.) The judgment against the company on the indebtedness now claimed was recovered in an action not commenced until the 13th of April, 1875. And for that reason, also, too great a period of time appears to have elapsed between the time when he sold and transferred his stock, and the commencement of that suit, to permit him to be held liable under the provisions of the statute made upon this subject. It appeared by the evidence, and the fact was found by the court, that sixty per cent of the par value of the stock in question was not in fact paid at all, but was satisfied in form by a mere artifice or device adopted for that purpose by the stockholders, and that was enough, under the terms of the statute, to render them severally and individually liable to the creditors of the company to an amount equal to the stock held by them respectively. (2 R. S. [5th ed.], 660, § 32.) But while the liability has been created by this section in general terms, it was so far restrained by a succeeding section of the same statute as to limit it to debts contracted by the company which were to be paid within a year thereafter, and then only when an action for the col-

lection of such debt should be brought against the company within one year after it should become due. (Id., 663, § 47.) It was also further provided by this section that no suit should be brought against any stockholder who should cease to be such, for any debt so contracted, unless the same should be commenced within two years from the time when he should cease to be such stockholder. Under these restrictions it is plain that no personal liability existed against the defendant Emmet, for these debts which were in fact contracted by the corporation after the time when he disposed of his stock. The utmost extent of his liability to creditors after the latter event was limited to two years, while the present action was not commenced until the 11th of November, 1875. And as this was not a creditor's suit to reach the equitable assets of the corporation, but simply to enforce a personal liability against the defendant as a statutory debtor to the plaintiff's assignor, it could not be maintained because he might be liable to an action at the suit of the company for the portion of the price of the stock appearing to remain unpaid. That was a debt owing to the corporation, and not in any view to the plaintiff or his assignor. For these reasons the complaint was properly dismissed as to the defendant Emmet.

As to the other defendants the facts were materially different, for they continued to be stockholders in the corporation, as that was shown by its books, certainly as late as December, 1872, and January, 1873. The books of the corporation, so far as they were given in evidence upon this subject, showed that on the 13th of February, 1872, the defendant Cornelia Gilman formally transferred her stock on these books to Henrietta Bramhall, and from the same evidence it appears that the defendants J. B. Brown and Phillip M. Brown, John M. Brown and Matilda G. Brown, on the 9th of December, 1873, in the same form, transferred their stock in like manner to Edwin C. Greely. Before that time the corporation had evidently become embarrassed in its financial affairs. For it appears by an agreement made by it with Edgar Tucker, the assignor of the plaintiff in this suit, which was made on the 15th of November, 1871, that the entire property and affairs of the corporation were placed in his hands, under an obligation on his part that he should provide, advance and apply the funds that might be needful to meet punctually the current liabili-

ties of the company incurred then and after that day. For this purpose the property and stock of the corporation were placed in his hands, and a lien was given to him upon it to secure him for the advances which he might make, and the debts which he might incur. And it was agreed that he should be paid for his services and the advances to be made by him, the sum of seven and one-half per cent commissions on the gross sales of the products of the corporation, and also interest at the rate of seven per cent for such advances. Under this agreement Tucker had the exclusive control and management of the business of the corporation, and by another succeeding it, and made on the 27th of July, 1872, it was in substance continued until the 1st day of December, 1875. Intermediate the making of these agreements a mortgage had also been given to Tucker upon the company's real estate for the purpose of creating a further security in his favor, and that mortgage, by the terms of the second agreement, was extended so as to become a security for whatever he might advance during the continuance of that instrument.

It is quite evident from these agreements that the company had at this time encountered serious embarrassments in the way of its financial operations, and the testimony in the case shows that this continued to be the fact down to the time when the other defendants formally transferred their stock, as that appears to have been done by the books of the corporation.

This is also further apparent from the circumstance that the advances made by Tucker between the time when the agreement was first made and the 13th of April, 1875, amounted to $183,452.81 more than the proceeds of the business. These facts clearly indicate that the corporation was actually in an insolvent condition all the while it was under the management of Tucker. And after this indebtedness had accrued to him, his action was brought against the company for the purpose of recovering this amount. Judgment in his favor was rendered on the 21st of June, 1875, and an execution upon that judgment was afterwards issued against the corporation and returned unsatisfied.

Between that time and the commencement of the present suit, Tucker appears to have become bankrupt, and for that reason this action was brought by his assignee to charge the defendants, on

account of their individual liability under the statute, for the indebtedness of the corporation to him. This was resisted by them, on the ground that their stock had been transferred and they themselves in that manner relieved from personal liability, before the indebtedness in controversy had any portion of it accrued. And, as already stated, the stock book of the corporation was introduced in evidence in order to show that such transfer of their stock certificates had been made, but no other or direct evidence was given for the purpose of showing an actual sale of their stock to either the purchaser Greely or Henrietta Bramhall. The most that seems to have been proved on this subject was what was shown by the book and a letter from Greely, dated the 31st of January, 1874, acknowledging the receipt, by him, of the new certificates issued upon the surrender of those previously delivered to the defendant Brown. Upon this subject some evidence was, it is true, given by the witness George T. Curtis, but he did not show himself to have had any actual knowledge of the fact that the Brown stock had been in fact transferred to Greely; what he did know, and the whole extent of his knowledge was, that such a transfer had been made of the certificates upon the books of the corporation.

What the statute obviously requires for the purpose of discharging a stockholder, in a corporation of this description from liability, is not only that the stock shall be transferred upon the books of the corporation itself (*Shellington* v. *Howland*, 53 N. Y., 371), but in addition to that, also that an actual sale or transfer of the shares shall be made by the preceding owner, while all that seems to have been established in this case was a simple formal transfer on the books of the corporation. It appeared further by the evidence that Greely, to whom the transfer was made by the defendants Brown, was in the employment of the defendant John B. Brown, in a sugar house, of which he was the proprietor, situated in Portland, in the State of Maine. The evidence also tended satisfactorily to show that he was not a person of any pecuniary responsibility. And by the statement made of the transfer of this stock on the books, it appears that each of the Browns transferred it to Greely on the same day, or at least such was the time of the transfer upon the face of the stock book. It does not distinctly appear

that all these Browns were related to each other, but it may be inferred from the fact that they all joined in the same answer, and made the same defence, that they acted in concert and co-operated together in the disposition made of their stock. In addition to that circumstance, they also alleged that the transfer of the stock of each of them to Greely was in fact made on this 9th day of December, 1873. Taking these circumstances together, that this corporation was in a financially embarrassed situation from the time of its first agreement with Tucker, down to and after the 9th of December, 1873, and that these persons were beyond doubt familiar with its condition in that respect, and all probably joined at the same time in transferring on the corporate books their stock, to a person in the employment of one of them who had no pecuniary responsibility, and the presumption arises that it was placed in his hands, if really transferred at all, simply to avoid the consequence of the statutory liability in cases of this description and to enable them to realize the advantages still to be possibly derived from it in case a favorable change should take place in the financial affairs of the corporation, and its business should again prove to be remunerative and profitable. In the absence of any actual proof to the contrary tending to show a *bona fide* sale in fact made, these circumstances create a presumption that this, probably, was the object of these defendants in formally transferring their stock to this man Greely. And that instead of being an actual or *bona fide* purchaser of it, he, formally only, took it in his name to enable the defendants Brown to avoid responsibility on account of it, and to enjoy in safety its profits, if a prosperous change should take place in the business of the corporation. The circumstances certainly warrant the inference that such was their design.

The evidence concerning Mrs. Gilman is very much of the same description. For it appears that the transfer of her stock stated on the books of the corporation to have been made was so made to her daughter, who resided with her, and was dependent upon her for her support. The evidence as to the invalidity of this particular sale is not so direct, or convincing as that relating to the stock transferred by the Browns to Greely. But at the same time it indicates the probability to be that Mrs.

Gilman placed her stock in her daughter's name on the books in order to avoid personal liability upon it on her part, and at the same time to retain it substantially within her control, in case it might afterwards turn out by a fortunate change in the affairs of the corporation to be an investment desirable to hold.

Under these circumstances, for the purpose of exonerating these defendants Brown and Mrs. Gilman from liability, it was necessary that further evidence should have been given on their part; proof, at least, similar to that supplied by the defendant Emmet, showing that a *bona fide* sale of the stock had in fact been made by him, and that there was no secret understanding or trust created by which the previous owners were in any event to be benefited, in case it turned out that their probable apprehensions concerning the solvency of the company were not well founded. Upon this subject it has been held that a member of a corporation who makes a fraudulent transfer of his or her shares for the purpose of avoiding personal liability may still be treated as a stockholder. (*Marcy* v. *Clark*, 17 Mass., 330.) The principle has been also declared that no member can exonerate himself from his liability, and defeat the claims of creditors, by transferring his interest to a bankrupt. (Angel & Ames on Corporations [4th ed.], sec. 623.) The same point has been elaborately discussed in. the English courts of equity, where this principle has been modified and applied to transfers of this description, by their adjudications. Under the rule they have maintained a stockholder may, when he desires to do so, transfer his stock for the purpose of avoiding future liability upon it, but he can only secure that result by making a transfer of an absolute character and in good faith. (*Re London*, etc., *Assurance Company*, 2 De Gex & Jones, 638.) And it was added by the chancellor that a court of equity would watch such a transaction with jealousy, and if it was connected with any unfairness it should not be allowed to succeed. (Id., 649.) The same point was sustained in the *Matter of the Mexican and South Am. Co.* (4 id., 544), and it was also applied to shareholders in the same company. (*Longworth's Executors Case*, 1 De Gex, Fisher & Jones, 19, and *Costello's Case*, 2 id., 302, and sustained in the case of *McLaren* v. *Franciscus*, 43 Mo., 452.) This case states the principle still broader, and perhaps more

so than can be properly deduced from the other authorities, for it was there held to be clear that no member of a corporation can exonerate himself from liability, or defeat the claims of creditors, by transferring his interest to an insolvent person or to a bankrupt. (Id., 467.) The members of a corporation therefore, it is said, would still be liable as such, where they have disposed of their interest to an insolvent person or with a view of exonerating themselves from personal responsibility. The latter branch of this proposition is in conflict with the English authorities already cited, which concede that the transfer may be made for the purpose of avoiding personal responsibility, but to be attended with that effect, it must be made by the party in good faith. But under the principle, as it is there maintained, it is necessary that the evidence should go further than that which was given in this case, before either Mrs. Gilman or the defendants Brown can be relieved from their personal liability as shareholders in this corporation. As the evidence left the case, the presumption arose that no such transfer of the stock, as was required to avoid personal liability for debts contracted by the corporation, was in fact made by either of these parties. And for that reason it is to be assumed that they have since continued to be stockholders in this corporation, but in the names of the persons to whom the formal transfers were made upon the books. And that is sufficient to render them liable for the debt of the corporation, owing to Tucker at the time when his suit was brought against the company for its recovery. For that debt, as it was found to exist, by the conclusions of the court, was not one for the payment of which a longer credit was given than that of one year, and the action was brought against the company for its recovery within one year after it had become due. It is not necessary to hold that this was the case as to the entire balance recovered by the judgment in Tucker's favor. It is sufficient that any considerable portion of it was a debt of that description, and that such was its character is substantially free from doubt under the evidence which was given on the trial of the cause. And it was also in effect so stipulated by the defendants.

For these reasons the case was within the provisions of the statute which have been already mentioned, and a recovery should

have been had, certainly, to some extent, by the plaintiff in this case against these defendants. As to the defendant Emmet the judgment was clearly right, and it should be affirmed, but as to the defendants Brown and Mrs. Gilman it was not of that nature, and should be reversed, and a new trial ordered, with costs to abide the event.

BRADY, P. J., and INGALLS, J., concurred.

Judgment affirmed as to the defendant Emmet, and as to defendants Brown and Gilman reversed; new trial ordered, with costs to abide event.