# CASES

# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF FRANKLIN.

ARGUED AT JUNE TERM, 1846.

### SAMUEL G. STANLEY *versus* JAMES STANLEY.

The legislature had the constitutional power, as by the st. 1839, c. 400, § 3, to make the stockholders of a corporation, created in 1833, personally liable to the amount of their stock for debts of the corporation, contracted while they were stockholders after the last act went into operation.

It is competent for the legislature, by an act passed for that purpose, to cause the private property of stockholders in a corporation to be made liable to be taken on executions against their corporations.

Under the statutes in force in July, 1841, the books of a corporation, so far as creditors were concerned, were to be deemed conclusive evidence as to who were, and who were not to be considered as stockholders. Parol evidence, therefore, was inadmissible, to show that a person had ceased to be a stockholder.

The returns of officers should be explicit, and contain all that is requisite to enable them to justify their doings. They are bound so to express themselves as to be intelligible; and must so express all that is essential. They are not, however, expected to use technical language with technical precision.

Where an officer, under the provisions of the statute, 1836, c. 200, returned that he could find no corporate *property* wherewith to satisfy the execution, instead of using the words of the statute, " *corporate property or estate,*" it was held to be sufficient.

THIS was an action of trespass, alleging, that the defendant took 3000 pounds of wool, the property of the plaintiff,

and converted the same to his own use on January 5, 1842. The defendant pleaded the general issue, and filed a brief statement setting forth that he was sheriff of the county of Franklin; that Joseph Covill was his deputy ; that Covill had an execution for service recovered by the Freeman's Bank against the Readfield Cotton & Woolen Manufacturing Company; that the company having no property or estate, Covill, after due notice to the plaintiff, took the wool named in the declaration to satisfy the same execution in part, and sold the same for that purpose, the plaintiff being a stockholder in that company when the debt was contracted.

At the trial before SHEPLEY J. it was admitted, that the defendant was Sheriff, and that Covill was his deputy. The defendant introduced copies of the writ, judgment and execution in favor of the bank against the company. The execution issued on December 9th, 1841. The debt, upon which the judgment was recovered, was contracted on July 27th, 1841. The return of W. V. Brown, a deputy sheriff, and the return of Covill are to be copied and annexed.

A book, purporting to be the book of records of the company, was produced, and Josiah Perham, Jr. introduced by the plaintiff, testified that he was the last clerk of the company, and that the book was used in the meetings of the corporation as its book of records. The following is his certificate of an extract from the records, read by him.

"The following is contained on the stock book of the Readfield Cotton and Woolen Manufacturing Company.

"Dr.                    Samuel G. Stanley                    Cr.

| 1841 | | 1841 |
|------|---|------|
| Jan. 4, To forty-eight shares No. 401 to 448 inclusive, transferred by J. Mooaer, | 48 | July, 31 By 48 shares No. 401 to 448 inclusive, transferred to Sargent & Huse." |

Perham testified, being objected to, that the plaintiff sold his shares to Sargent & Huse, the latter part of June or fore part of July, 1841, and received an obligation from them to pay for them ; and delivered to them the certificates ; that he was then agent of the company, and that Huse delivered the

certificate to him a few days, not more than ten days after, and wished him to have the shares transferred, and that he told him he would take them down to Readfield and have them transferred for him ; that he thought he did not go down until the 31st day of July, 1841, and on that day handed the certificate to the clerk, and asked him to make the transfer upon the books; that the clerk desired him to make the entry upon the books and he did so at the time ; that the par value of a share was $25 ; that Covell called upon him with the execution to know if there was any property of the company to satisfy the execution, and was informed that there was not and that there were no debts then due to the company which were good and which had not been transferred.

The cause, by consent, was taken from the jury and is submitted to the decision of the Court, upon this testimony or so much thereof as may be legal, and the Court is to enter such judgment as the rights of the parties may require.

The following are the copies of the returns of the officers referred to : —

"Kennebec, ss. December 9, 1841.  I have made diligent search to find corporate property of the defendants wherewith to satisfy this execution and can find none, and the same is in no part satisfied.        "W. V. Brown, Dep'y Sheriff."

"Franklin, ss. December 20, 1841. I have made diligent search to find corporate property of the defendants wherewith to satisfy this execution, and can find none, and the same is in no part satisfied with corporate property.

"Joseph Covell, Dep'y Sheriff."

Then follows upon the execution a return by Covell, dated December 24, 1841, of the taking and sale of the wool, in part satisfaction of the execution.

R. Goodenow and Randall, first gave a history of the legislation of this State with respect to corporations, and said that it was certain, that there was no law making stockholders of a corporation liable for its debts when the act incorporating the Readfield Cotton and Woolen Manufacturing Co. was

passed in 1833. If the plaintiff was made liable by any law for the debts of the corporation, it *was by the* st. 1839, c. 400, § 3. The st. 1831, c. 503, gives no power to alter the liabilities of stockholders in a corporation by a general law. It merely provides, that the act creating the corporation may " be amended, altered or repealed at the pleasure of the legislature." This has never been done, or attempted to be done. It was contended, that the legislature had no power, under the constitution, to impose new and additional liabilities upon the stockholders of this company, and that the statute of 1839, so far as it attempted to do it, was unconstitutional and void, and could furnish no justification for the acts of the deputy of the defendant. 2 Cranch, 338.

It was also contended, that as the plaintiff was not a stockholder in the company when this action was commenced against it by the Freeman's Bank, that he could not be presumed to have any knowledge of the suit, and if he had, he had no power to appear and defend the action. This therefore is an attempt to take the property of the plaintiff, to satisfy an execution issued upon a judgment to which he was not a party, and against which he had no opportunity to make defence. It is but the taking of the property of one man to satisfy a judgment against another.

The plaintiff was not a stockholder in the corporation at the time their debt to the Bank was contracted, and stockholders only are liable under any act. Whenever a man sells out his stock, he can no longer be a stockholder in the company, and could hold no office required to be holden only by a stockholder. The entry of the transfer upon the books of the corporation is always made after the sale, and merely for the convenience of the purchaser.

But if the plaintiff was liable to have his property taken to satisfy an execution against the corporation, on the ground of his having been a stockholder, the justification set up fails, because it does not appear, that such preliminary steps were taken by the officer, as the law requires, before the property of the individual can be taken on an execution against the

corporation. The officer must first certify on the execution, that he can find no *corporate property or estate*, before he can touch the individual property of the stockholder. The words, *property or estate*, are used several times in the statute, and must have been understood to have meant different things, and not the same. The officer is bound to make an explicit return of his doings, and nothing can be presumed in his favor.

It was also contended, that the return by the officer of the sale on the execution was defective, because it merely stated, that " he had given forty-eight hours notice of his intention," &c. without stating the amount of the debt or deficiency.

*Wells*, for the defendant, said that the plaintiff was a stockholder in the corporation when the debt to the Bank was contracted. The debt was contracted on July 27, 1841. The statute 1838, c. 325, then in force, provides that the shares may be transferred by endorsement and delivery thereof; but specially provides, that " the title to such stock shall not pass from such proprietor, until such transfer has been so far entered on the corporate records, as to show the names of all the parties thereto, and the date of the transfer." No entry whatever was made of any transfer from the plaintiff until July 31, 1841, and the entry then made is not a compliance with the requisitions of the statute.

The plaintiff was liable for the debts of the corporation to the amount of his stock when the debt to the bank was contracted, and so continued until one year after the record of the transfer of his stock. The statute of 1831, c. 503, gave the legislature the right to amend, alter or repeal any act of incorporation, and the Readfield Company was incorporated under the provisions of that act. The st. of 1836, c. 200, made stockholders in corporations, created after that time, liable for the debts of the corporation to the amount of the stock held. And the stat. 1839, c. 400, § 3, subjected stockholders in corporations created since the passage of the act of 1831, to all the liabilities imposed on stockholders by the statute of 1836, so far as it respected debts, contracted as this

was, after the act of 1839 became a law. The rights of the plaintiff were saved by the exception in the repealing act; and if not, c. 76 of the Rev. Stat. continued the liability of stockholders for debts of the corporation contracted as this was.

The return of the officer, that he had made diligent search for *property* of the corporation was sufficient. The statute says *property or estate.* Either word is enough without the other, as they have precisely the same meaning.

The opinion of the Court was drawn up by

WHITMAN C. J. — The first question to be considered is, whether the plaintiff's situation was such as to subject him to the operation of the statute of 1839, c. 400. As the act creating the corporation, to which the credit was given, was passed in 1833, it is contended, that it was not competent for the legislature, afterwards, to enact that the individual stockholders in it, should be made liable for its debts. But this debt was incurred after the passage of the act of 1839; and that act did not provide for any such liability, except for debts incurred after its passage; and this debt was incurred in 1841; and the plaintiff purchased his stock in the corporation after that time. He may, therefore, be regarded as having purchased with full knowledge of the liability intended to be created, and, therefore, as assenting to it. And besides; if the corporators were not satisfied with their individual liabilities, so created, they had it in their power to cease incurring them. We are satisfied, therefore, that it was competent for the legislature to make such a provision.

It is next insisted, that, if the private property of individuals could be rendered liable to be levied upon, it could not be done by virtue of judgments and executions against their corporations, in which they were not summoned individually to appear, and as such, had no opportunity to make defence. But it has been considered, that corporations of this class were, in reality, but joint stock companies, enabled to manage their concerns under corporate names; and that, therefore, the individual corporators were to be regarded as parties in effect,

in suits against them as corporate bodies; and, therefore, that it is competent for the legislature to cause the private property of the individual corporators to be liable to be taken on execution, against their corporations, the same as if it were against the individuals themselves, who might be doing business under an assumed name of copartnership. *Marcy* v. *Clark*, 17 Mass. R. 330. This objection therefore, is not sustainable.

The next question presented is, was the plaintiff a stockholder at the time the credit was given? If not, by the Rev. Stat. c. 76, he was not liable, and his property could not be levied upon for the debt in question. This presents a matter of fact, which it has been agreed that we may decide from the evidence reported. It appears that the debt was contracted on July 27, 1841; and from the copies of transfers, as entered upon the books of the corporation, it appears, that the plaintiff was a stockholder from January 4, 1841, to July 31, of that year. But he introduced evidence tending to show his transfer, though not entered as of record, till July 31, was in fact made before the 27th of that month, and so before the credit was given. The defendant objected to this evidence; insisting that the transfer, as it respected the creditors of the corporation, was not effectual till entered on the transfer books. It would seem to be reasonable and highly expedient, as the statute has provided that none shall be liable, who were not stockholders at the time of the credit given, that there should be some settled and well defined mode in which creditors should readily be able to ascertain who were stockholders at the time of their giving credit in such cases. They could not be expected to know any thing of the private negotiations between stockholders and other persons, unless some such mode were prescribed. The transfer books would furnish such data as, if they are allowed to be conclusive, would answer the purpose; and it seems scarcely reasonable to doubt, that the legislature must have intended such evidence should be relied upon conclusively. In two other instances in the statute, c. 76, it is rendered certain that such transfer books should be conclusive. The first is in § 18, where it is provided, that the

individual stockholders shall be liable, and it is also provided, that they shall be so liable for the term of one year after the record of the transfer of their stock on the books of the corporation. The second is in § 21, which enacts, that the clerks of corporations, on demand, shall furnish any officer, legally holding any execution against the same, with the names of the stockholders, with their places of residence, so far as known; and the amount of liability of each. The legislature, must of course have considered, that reliance upon information so obtained (and it could only be obtained by the clerk from the transfer books,) was conclusive in favor of creditors, as against the stockholders of the corporation. It would seem to be equally important, that a creditor, being bound to take notice of who were to be deemed stockholders at the time of giving credit, should have the same resource for information; and, moreover, it is important, that any one giving credit to a corporation should, at the time, be able to ascertain who the individuals were, who might become ultimately responsible to him, as well as subsequently, when it might become necessary to call upon them for payment. We think, therefore, that the evidence objected to should have no weight; and that the transfer books, so far as creditors were concerned, were to be deemed conclusive as to who were to be considered as stockholders.

It is objected, also, that the return on the execution, issued against the corporation, by the defendant's deputy, is defective, and does not show such proceedings thereon, as would justify his seizing and making sale of the defendant's private property. In the return, he states that he has not been able to find property belonging to the corporation; but does not say he could find no property or estate in the language of the statute. It is true, that officers' returns should be explicit, and contain all that is requisite to enable them to justify their doings. They are not however, expected to use technical language, with technical precision. They are bound so to express themselves as to be intelligible; and must take care that they so express all that is essential. If the word property

Stanley *v.* Stanley.

embraces all that is embraced in the words *property or estate,* it must be deemed sufficient. Webster defines property to mean estate, and estate to mean property; and Jacob says, property is the highest right a man can have to any thing real or personal. The word property, therefore, comprehended the meaning of both words; and was therefore sufficient.

Several other objections, of minor importance, have been made to the return of the deputy, which we cannot think of sufficient weight to deserve particular animadversion; and they must be overruled.

*Plaintiff nonsuit.*