M. D. LEWIS, PUBLIC ADMINISTRATOR, Plaintiff in Error,
v. ST. CHARLES COUNTY, Defendant in Error.

February 5, 1878.

Where it is provided by the charter of incorporation that each stockholder of
the corporation shall be liable to the corporation creditors "to the amount
of his stock, and no more," the mere fact of his having paid to the corpo-
ration the full amount of his stock subscription is no defence to an action
by such creditor against him after the dissolution of the corporation, but
he is, notwithstanding such payment, still liable to the creditor to the full
amount of his stock.

ERROR to St. Charles Circuit Court.

*Reversed and remanded.*

POGUE & BROWN, for plaintiff in error, cited : *The State
v. Gaither*, 1 Mo. 501 ; *Cabanne v. Lavallee*, 1 Mo. 394 ;
*Boyd* v. *Sargent*, 1 Mo. 437 ; Laws 1845, p. 233, sec. 13 ;
Laws 1851, p. 265, secs. 26, 33 ; Laws 1865, p. 40 ; Const.
1865, art. 8, sec. 6 ; *Kritzer* v. *Woodson*, 19 Mo. 330 ; *State
Savings Assn.* v. *Kellogg*, 63 Mo. 540 ; *Perry* v. *Turner*,
55 Mo. 419.

WILLIAM A. ALEXANDER, for defendant in error.

LEWIS, P. J., delivered the opinion of the court.

The petition sets forth, in substance, that in September,
1851, the St. Charles Western Plank-Road Company was
organized as a corporation, under an act to authorize the
formation of associations to construct plank-roads and
macadamized roads, approved Feb. 27, 1851 ; that the de-
fendant, under authority conferred by law, subscribed for
forty-four shares of the capital stock of said corporation, at
$50 per share, amounting to $22,000 par value, and paid
up the full amount thereof ; that by virtue of an agreement
made on the ninth day of June, 1860, between said corpora-
tion and the firm of which the present plaintiff's intestate
was surviving partner, an indebtedness arose from the cor-
poration to said firm in the sum of $1,800, less $700 which

has since been paid ; that on Jan. 1, 1866, the corporation was dissolved, the said indebtedness being still unpaid, and the defendant was at that time a stockholder as aforesaid. Judgment is prayed against defendant for the amount of indebtedness remaining unpaid, with interest.    The Circuit Court sustained a demurrer to the petition on the ground that it did not state facts sufficient to constitute a cause of action.    The point made by the ruling was, that the defendant, having paid up the full amount of its subscription, could not be held liable to a creditor of the corporation for any additional sum.

Sec. 26 of the act under which the corporation was organized (Sess. Acts 1851, p. 264) provides that "if any company formed under this act dissolves, leaving debts unpaid, suit may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the company in such suit." The thirty-third section declares that associations formed under the act "shall possess the general powers and be subject to the general restrictions and liabilities contained in an act concerning corporations, approved March 19, 1845, except that the thirteenth section of article first of said act shall be so far modified, in its application to this act, as that a stockholder in any company formed under this act shall not be liable for more than the amount of his stock." The thirteenth section of the act of 1845, thus referred to, is as follows : "In all corporations hereafter created by the Legislature, unless otherwise specified in their charter, in case of deficiency of corporate property or estate liable to execution, the individual property, rights, and credits of every member of the copartnership or body-politic having a share or shares therein shall be liable to be taken on execution, to double the amount of his stock, and no more, for all debts of the corporation contracted during his ownership of such stock." * * *

If we proceed to modify the act of 1845, as directed by

the section quoted from the act of 1851, the result will be, as it would seem, that, in the case stated by the petition, "the individual property, rights, and credits" of the defendant will be "liable to be taken on execution" to the amount of its stock, "and no more."

What did the Legislature intend in the limitation of a stockholder's "liability" to the amount of his stock? A person who subscribes to a joint-stock association incurs a twofold liability. One obligation is to the corporation itself, that he will pay for the shares taken. Another is imposed on him by law, under specified conditions, in favor of the corporation's creditors, present or future. Is the one or the other of these the liability intended by the statute, or is this compounded of both? The defendant here assumes that "the amount of his stock" is the measure of the stockholder's aggregate liabilities to both corporation and creditors. So that if, in paying for his stock, he has filled that measure, no further claim can be made upon him by any one. The plaintiff contends that the statute refers only to the claims of creditors, leaving the obligation — with which the creditor has nothing to do — between the stockholder and the corporation to be adjusted by the original parties.

Strange as it may seem, the precise question thus indicated has never had a final judicial solution in Missouri. It is asserted that the defendant's interpretation, as sustained by the Circuit Court in this case, has generally prevailed among members of the bar. A *dictum* in *Perry* v. *Turner*, 55 Mo. 424, seems to present the same view as not open to discussion. The question was not at all involved in the case. But Judge Napton, whose accuracy and profound learning are part of the judicial history of Missouri, in referring to certain provisions in the corporation law of 1865, said : "This section is manifestly a copy of the thirty-second section of the act of 1855, concerning road associations, under which only a single liability was attached to

stockholders; and the Legislature neglected to make the corresponding changes which the Constitution of 1865 required. So that under this twenty-second section, as it stands copied from the law of 1855, the defendants are not liable at all under the allegations of the petition, which concede that they had fully paid up their respective shares of stock; for the thirty-ninth section of this law of 1855 declares, in so many words, that ' a stockholder in any company formed under this act shall not be liable for more than the amount of his stock,' and the twenty-second section of the act of 1865 is a simple repetition of the thirty-second section of the act of 1855 above referred to." The learned judge then proceeds to conform the application of the statute criticised to the operation of the new Constitution, which " did not permit the Legislature to diminish the liability of the stockholder below that of the full amount of the stock subscribed, and whatever portions of the stock may have been unpaid." This necessary adaptation of the statute to the requirements of the new Constitution left nothing to be interpreted touching its mode of application under the old order of things.

We have carefully examined the statutory regulations, with the adjudications upon them in other States, affecting the responsibilities of stockholders for debts of their corporations. It is remarkable that in no single instance where the law makes " the amount of the stock held "— or any equivalent of that expression — the measure of liability does it seem to be supposed that the obligation of the stockholder to the corporation, or his payment or non-payment for his stock, has any thing to do with the rights of the creditor secured by such provision. The *dictum* in *Perry* v. *Turner, supra,* is practically reversed on all occasions. Before illustrating this remark, it seems proper to glance at the common understanding of what is meant by " double liability " under the Constitution of 1865 and the legislation relating thereto.

Sec. 6, art. 8, of the Constitution of 1865 provides: "Dues from private corporations shall be secured by such means as may be prescribed by law; but in all cases each stockholder shall be individually liable, over and above the stock by him or her owned, and any amount unpaid thereon, in a further sum at least equal in amount to such stock."

"Dues from private corporations" cannot be supposed to include dues from a corporator to the corporation for stock purchased. If we take this initial phrase as the basis of what follows, making it control the purport of the expression "each stockholder shall be individually liable," we will find this also to be exclusively applicable to the claim of the creditor against the corporation, and not to the claim of the corporation against the stockholder. A literal interpretation of the provision must, then, result thus: A. owns a share of stock valued at $100. A "further sum at least equal in amount" to this is $100 more, making $200, for which he is "individually liable." To this must be added "any amount unpaid thereon." So that if he yet owes $50 on his subscription, this sum must be added, making $250. If he has paid nothing, $100 must be added, making $300. The total, in either case, must go to the creditor, since the whole subject-matter is of "dues from" the corporation, and the declared measure of the stockholder's individual liability has no reference to any thing else.

The constitutional provision has, however, a legislative interpretation to very different effect. In Wagner's Statutes, p. 291, sec. 13, it is provided: "If any execution shall have been issued against the property or effects of a corporation, and if there cannot be found whereon to levy such execution, then such execution may be issued to any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon." It may be suggested that a material difference thus appears between this legislative limit of a liability only

" equal in amount " to the value of the stock, and the consti-
tutional one of a " further sum," also equal in amount, " over
and above the stock " owned.   For that, the legislative ex-
pression makes the stock value no part of the entire sum,
but only a measure of comparison ; while that of the Con-
stitution makes it not only a measure, but an initial quan-
tity, to which an equal is to be superadded.

This apparent discrepancy is, however, by no means
irreconcilable.   The reference to " any amount unpaid "
on the stock is an indication that the framers of the pro-
vision had in contemplation an aggregate liability of the
stockholder on all accounts, — as well upon his contract with
the corporation, as upon his resulting responsibility to its
creditors.   The separation of this idea from that of dues
from the corporation is deemed fully sufficient to justify
the legislative interpretation.   In this view, there is little
difficulty in harmonizing the interpretation with adjudica-
tions upon similar provisions in other States.   But the leg-
islation prior to 1865, making no direct reference to the
stockholder's obligation to the corporation, differs very
materially from the later constitutional regulation.   These
considerations, apparently foreign to the matter in hand,
are here introduced for the purpose of more clearly show-
ing the method of interpretation applicable to the law, as
it stood prior to 1865, in its influence upon the case be-
fore us.

The liability of a shareholder for the indebtedness of a
joint-stock corporation depends, in every instance, either
upon express statutory or constitutional provision, or upon
some ground of equitable interposition.   Attempts were
formerly made to place such associations on the footing of
copartnerships, so that every member would be held respon-
sible for all the engagements of the joint interest.   But the
principles of the corporate function have long been under-
stood to admit of no such doctrine.   The capital stock,
made up of specific contributions, apportioned into shares

having a fixed value, and transferable as property, constitutes a visible fund, upon which creditors are supposed to rely in their dealings with the corporation. The stockholder who has paid his share in full is considered to have performed his whole duty. If, however, he is in arrears for any part or the whole of the stock owned by him, equity, treating the entire stock as a common fund for the benefit of creditors, will compel him to pay up his dues, whether into the treasury of the corporation or directly to the creditor who has instituted proceedings to enforce his rights. Responsibility to this extent exists independently of statutory provision. It is, therefore, but natural to suppose that, when the statute law advances in aid of the creditor, its purpose is to accomplish something new.

If a statute declares that any stockholder may be recovered against by a creditor of the corporation to the extent of the balance unpaid on his stock subscription, nothing is thereby added to the stockholder's ultimate liability, but something may be added in the more direct means for its enforcement. If, however, the statute says that each stockholder shall be individually liable to an extent equal in amount to the stock owned by him, making no qualification as to whether it be paid for or not, it becomes a necessary inference that here is an enlargement of the stockholder's responsibility. His amenability in a court of equity for the full payment of his subscription remains as before. This is a debt due to the corporation, and not to the creditor. But equity, nevertheless, compels its liquidation for the creditor's benefit. The statutory liability is distinct and separate. It treats the share of stock as so much property owned by the stockholder, who will still retain its undisturbed possession. He may yet realize dividends upon it, or may sell it for value. But to compensate these advantages he must pay to the creditor of the corporation, whose money, property, or labor has gone into its substance and helped out its dividends or its values, an amount in money equal to the

nominal estimate of his stock property.   Such seems to be
the effect, universally admitted, wherever a statutory pro-
vision of this description prevails.

In other States, the regulations on this subject are vari-
ous.   In some, a general law prescribes a uniform rule;
in others, different rules are provided for different classes
of associations; and in yet others, the subject is disposed
of in the terms of each charter.   The several forms and
measures of the stockholder's liability are not less diversi-
fied.   In some instances, he is held to the unlimited respon-
sibility of a partner; in some, there exists no liability
beyond the unpaid balance on subscription; in some, the
statutory responsibility ceases when all the stock is paid in.
In perhaps a majority of cases, the stock " owned " or
" held " by the stockholder is, under prescribed conditions,
made the positive standard or measure of his liability.   To
the adjudications upon regulations of this class we must
look for guidance in determining the respective rights of
the parties before us.

In Angell and Ames on Corporations, sec. 621, the general
rule, as gathered from the authorities, is stated thus:
" Where, by the terms of the charter of a joint-stock com-
pany, the stockholders are individually liable for the corporate
debts to the nominal amount of their stock, a party who sub-
scribes for a certain number of shares of the stock is liable
for the debts of the company to the nominal amount of the
stock subscribed by him, although he has not paid in any part
of his subscription, or done any act whatever as a stockholder
of the company.   And under such a provision in the charter
it is no defence that the stockholders have paid in the full
price of their stock; and they are liable individually to pay
as much more, if necessary, to discharge the debts due at
the time of dissolution."

In *Briggs* v. *Penniman*, 8 Cow. 387, the New York
statute under consideration provided that in the event of
dissolution of a corporation, the stockholders at the time

should be "liable to the extent of their respective shares of stock held in such company, and no further," for corporate debts remaining unpaid. The point was expressly urged for defendants that they were not liable, because they had "paid up the price of their shares in full." The court held the contrary. Said Woodworth, J.: "Every stockholder in a company of this description incurs the risk of not only losing the amount of stock subscribed, but is also liable for an equal sum, provided the debts due and owing at the time of dissolution are of such magnitude as to require it." Said Spencer, senator: "On the second point, that the individual corporators are not liable beyond the amount already paid in by them to the company, even if it be deemed dissolved, it cannot be necessary to spend much time. The stock subscribed, and agreed to be paid into the company, became corporate property, and, when paid in, might be reached by ordinary proceedings; and if not paid in, a court of equity would compel the trustees to collect and apply it to the payment of debts. * * * Surely the Legislature did not mean to declare that the stockholders should be liable, as they had already agreed to be liable, and as they were liable at common law. Something more was intended; and it is to my mind very clearly expressed that the extent of the stock held by them should be the measure of their individual liability to creditors. The statute does not refer to them in their corporate capacity, but as individual stockholders; and it declares their liability, without reference to the amount they may have paid in on their stock."

In *Spear* v. *Crawford*, 14 Wend. 20, the action was founded on the charter of the Harlem Canal Company, which enacted that the stockholders of the corporation should "be holden in their individual capacities responsible, jointly and severally, for the payment of all debts contracted by the company, to the nominal amount of stock held by such stockholders respectively." The defendant there attempted to escape responsibility on the ground that he had paid

nothing on his stock subscription; but the court held this to be immaterial. If the defendant stood in such a relation that the company could compel him to pay for the stock, then the creditor could treat him as a stockholder, and demand in his own behalf a sum equal to the nominal value of the stock.

In *Matthews* v. *Albert*, 24 Md. 527, the controversy depended on an enactment in these words: "That all the stockholders of every company incorporated under this act shall be severally and individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively," etc. The court say: "The defendants occupied the twofold relation of debtors to the company for the amount of their stock at par value, and as debtors under the statutes to the creditors of the company to an amount equal to their stock, for all debts and contracts created while they were stockholders." The court then refers to *Briggs* v. *Penniman* (*supra*), and, remarking that the New York statute is, in its controlling terms, the same as the Maryland act, adopts the conclusion in that case, that the liability of the stockholders is "without reference to the amount they may have paid in on their stock."

In *Stanley* v. *Stanley*, 26 Me. 191, the plaintiff sued a sheriff in trespass for seizing his goods under a statute which made stockholders in corporations "liable for the debts of the corporation to the amount of the stock held." The principal questions considered related to the constitutionality of the act, and to the time when the plaintiff had become a stockholder. It is manifest from the whole treatment of the case that the stock was fully paid up; yet no diminution of liability was pretended on that account. The levy was held to have been proper, and the plaintiff was nonsuited.

In Illinois, the general act of February 10, 1849, concerning corporations for manufacturing and other purposes, declares as follows: "All stockholders of every company

incorporated under this act shall be severally individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of the stock held by them respectively," etc. Under this provision a number of cases have arisen, to be finally adjudicated in the Supreme Court of the State. In each, it is apparent that the idea was never entertained of a possible escape from the statutory liability on the ground that the stockholder had discharged his liability to the company. On the contrary, the defence in every instance was such as to reject the admissibility of any such theory. *Sherman* v. *Smith*, 20 Ill. 350; *Tarbell* v. *Page*, 24 Ill. 46; *Baker* v. *Backus*, 32 Ill. 79.

A number of other illustrations might be here cited to the same effect, but these seem to suffice for the present purpose. We find no ruling, from any source, which, under a law to the effect that, for the dues or debts of a corporation, the stockholders shall be liable to the amount of their stock, holds that the stockholder's payment for his stock operates to discharge the liability. It is really a misapplication of terms to treat the relation of the corporator to the corporation as defining, in whole or in part, the " liability " which such a law contemplates. The corporator is simply a purchaser from the corporation. He has paid the price, and possesses the commodity purchased, with all its rights, benefits, and privileges. That transaction is closed. The liability to creditors is a new relation, of a different sort, which may or may not attach, according to circumstances. There is nothing in the act of 1851, under which the St. Charles Western Plank-Road Company was organized, or in the act of 1845, to which it refers, that can justify any departure from the plain principles of construction above exemplified.

The brief of respondent's counsel states but a single point in support of the action of the Circuit Court; from which we infer that no other was considered under the general

demurrer, as sustained. As the cause must be remanded, it may be well to direct attention to another matter, which may suggest an amendment to the petition. There is no averment of " deficiency of corporate property or estate liable to execution " to bring the case directly within the terms of the thirteenth section, p. 233, Revised Statutes of 1845. Whether this is sufficiently comprehended in the averment that the corporation is dissolved and abandoned, we do not feel called upon to decide, since the point is not raised by counsel here, and we cannot perceive that it was specifically presented for consideration by the Circuit Court.

Our opinion is, that the mere fact of defendant's having paid in full the amount of its stock subscription constituted no defence against its statutory liability for debts of the corporation, under the circumstances defined in the law of its organization. All the judges concurring, the judgment is reversed and the cause remanded.