Spear, J.
1. Was W. A. Roberts a party in the circuit court?
Issue was made by the answer of Harpold, and the reply, as to his-alleged transfer to Roberts, and as to his right to have all assessments against the shares of stock by him sold to Roberts, made against that party. Hence Roberts was a party necessary to the working out of the equities of Harpold, and that fact gave Harpold the right to appeal.the whole case in so far as it affected him, and that appeal carried Roberts into the circuit court, whether his presence in the case as a creditor had a like effect or not. There was no error in overruling Roberts’ motion to dismiss the appeal. But the appeal vacated the judgment rendered against Roberts in the common pleas, and his payment of four hundred dollars, made on that judgment, should have been credited to him in the circuit court, and the refusal to so credit it, we think was error.
*400 2. Did the circuit court err iu its judgment against Peter Harpold ?
The controversy arises as to thirty shares of stock, -which, on May 12th, 1873, he sold in good faith and for value, to W. A. Roberts, and he claims that, as to these, he should be held only as a guarantor for Roberts, and that such liability should be confined to a proportional liability for debts existing at the time of the sale. The sale was admitted, but it was claimed by the creditors that there was no transfer of the stock on the books of the company, and hence that Harpold continued liable to creditors as though he had owned the stock at the commencement of the action. The findings of the circuit court show that the transfer stock book of the company was Journal A; that no transfer of this stock was made on that book, though a .transfer was, at the time of the sale, entered by the secretary in a-small book present in the office of the company, and it was then understood that the secretary would make the transfer in another book then at his house. The president and directors of the company were present and knew of the transaction. Harpold was a director at the time, and he did all that he supposed necessary to effect the transfer, and the corporation thereafter treated Roberts as the owner of the stock. Two years later, there was an entry on Journal A, of the transfer of eighty shares from Roberts to one R. R. Hudson, which included the thirty shares purchased by Roberts from Harpold. At the time of the trial Harpold still appeared by Ledger A and Journal A, to be the owner of thirty shares of stock.
The creditors have the right to resort to and rely upon the proper book of the company as showing who the stockholders are, and the amount of stock held by each, and they are presumed to have relied upon the record so found in this case. While it is not necessary that a book of any special kind be adopted for that purpose, yet when one is selected and used, that becomes the stock book, and transfers, to be valid, must be made upon that. The object to be accomplished by the keeping of such a book requires reasonable certainty as to its identity. Where the book so selected and used by the com *401 pany shows that the party is the owner of shares of stock, he is estopped, as. between himself and creditors, to contradict the record, provided the entry was placed in the stock book originally by his consent. And where the name of an actual stockholder appears upon that book as owning a given number of shares, the entry is presumed to have been made with his consent; at least this is so where it was correct when made, and, as between him and creditors of the corporation, he is •estopped to contradict the record, or deny ownership of the shares. Revised Statutes, sec. 3259; Lowell on Transfer of Stock, sees. 82, 107, 191, 203; Thompson’s Liability of Stockholders, sec. 217; Ex parte Brown, 19 Bevan, 97; Stanley v. Stanley, 26 Me. 191.
The circuit court treated Harpold as the owner of these shares, as between him and creditors, and this, we think, was correct. But, as between Harpold and Roberts, the former was entitled to a judgment against the latter.
3. The finding as to Daniel Bibbee presents the facts upon which may be determined the further question in the case. He was the owner of twenty shares of stock, the par value of which was $2,000. On the 31st day of May, 1875, he sold this stock, in good faith and for value, to one R. R. Hudson, and the same was on that day transferred to the latter on the books of the company. The company continued to do business until the year 1878, when it failed, many new debts having accrued in the meantime. Hudson became insolvent, and was so at the time the cause was tried. At that time the liabilities of the corporation reached $43,791.05, a sum in excess of the face value of all the stock held by solvent stockholders, as well those who had assigned their stock as those who were holders at the commencement of the suit. During the life of the corporation frequent changes occurred in the ownership of portions of the stock, and debts against the corporation accrued at various times during that period.
In its decree the court divided the indebtedness into series, and made assessments upon stockholders to meet each class of debts, with a finding as to what stockholders were solvent, and *402 the amount of stock held by each at the date fixed for each assessment, rendering judgments accordingly. Those who-owned stock at the commencement of the action, and were solvent, were assessed the full amount of their statutory liability, and that liability was thus exhausted. By this finding it appears that between July 11, 1873, and January 1st, 1875, there existed debts still unpaid to the amount of $4,152i50, upon which assessment was made against Bibbee of $519.25. Between June 15, 1870, aud July 11, 1873, there existed debts still unpaid to the amount of $13,148.00, upon which he was assessed $1,391.00, and prior to June 15, 1870, there existed debts to the amount of $926.90, upon which¡ he assessed $80.00, the whole amounting to a sum practically equal to the amount of his stock. In making these assessments the court commenced with the class of stockholders who held stock at the date of the failure of the company, and assessed each solvent stockholder to the full amount of his liability in respect of all the debts then due from the corporation. The amount so procured not proving sufficient to pay the obligations, the court then, proceeding to the class last in order of assignment of stock, assessed the solvent assignors of the present insolvent stockholders, in the amount of their liability in respect of the debts contracted prior to the transfer of their stock to their insolvent assignees, and so proceeded until all-liability on stock was exhausted.
The effect of this rule, as to each solvent assignor of stock to-an insolvent assignee, was, to make him liable, not simply to a proportionate amount of the indebtedness which existed while-lie was a stockholder equal to the ratio which his proportion of the capital stock bore to the entire stock held by solvent stockholders, but to an amount equal to the full amount of his-stock.
It is claimed for Bibbee that he should have been assessed but $956.64, in all, and that the court erred in omitting to include in the class of stockholders who were liable with him those who were holders of stock when the suit was commenced, but who, by the decree, were left out because their liability had already been exhausted. This claim presents the question *403 to be determined, which is : Is this party to be assessed in a class which includes only those who were stockholders at the time he was such and are solvent, or should such class include also those who continued to be stockholders, and so became liable in respect of after accruing debts ?
We first inquire what liability was created? What right of contribution, if any, attended it? Is the liability which may be enforced to be measured by the extent of liability as of the time it attached, or may it be enlarged by reason of a change in the condition of the corporation brought about by after accruing debts ? And is the right of contribution to be impaired by reason .of like causes ?
We are not materially aided in making answer, either by text books, or by decisions of courts outside of our own.
The constitutional provision is : “ Dues from corporations shall be secured, by such individual liability of the stockholders, and other means, as may be prescribed by law; but in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock.” And the statute is: “ All stockholders * * * shall be deemed and held liable, to an amount equal to their stock subscribed, in addition to said stock, for the purpose of securing the creditors of such company.”- It will be noted that neither provision gives a rule for determining who are stockholders, nor for ascertaining whether or not all may be treated as stockholders for some purposes, and no£ for others. But such questions are left for determination by the courts in giving construction to the statute, as cases may arise. In construing these provisions, the holdings in this state are to the effect that the individual liability of stockholders attaches in favor of creditors at the time the debt is contracted, or the liability incurre'd by the corporation, and that such liability is not discharged by the subsequent assignment or transfer of the stock, but the successive assignees impliedly undertake to indemnify or discharge the assignor from the liability which attached to him while he held the stock. This right against the stockholders is intended for the common and equal benefit of *404 all the creditors. As between the stockholders and the creditors, each stockholder is liable severally to all the creditors; but, as between stockholders, there is a proportional liability by all stockholders and right of contribution which grows out of the organic relation existing between them, and, as between them, each stockholder is bound to pay in proportion to his stock. The liability is not a primary fund or resource for the payment of the debts of the company, but is collateral to the principal obligation which rests on the corporation, and is to be resorted to only in case of the insolvency of the corporation, or where payment cannot be enforced by ordinary process. Wright v. McCormack, 17 Ohio St. 86; Umstead v. Buskirk, Id. 113; Brown v. Hitchcock, 36 Ohio St. 667; Wheeler v. Faurot, 37 Ohio St. 26 ; Bullock v. Kilgour, 39 Ohio St. 543; Mason v. Alexander, 44 Ohio St. 318.
Of the foregoing there should be emphasized three important conclusions bearing upon the question under consideration, viz :
(1). The liability of the stockholder is collateral to that of the principal debtor, the corporation. (2). This liability attaches at the time the-debt against the corporation is created or liability incurred. And (3), each stockholder sought to be so made liable, has, in order that his liability may be confined to his just proportion, the right to insist that all stockholders within the jurisdiction and solvent, who stand in the same relation to the debts with himself, shall be brought in, and be held to their proportional liability in common with’him.
When it has been determined that the liability of the stockholder is collateral, and not original, his right to ask for a marshalling of other like securities arises. So, too, when it has been determined that the liability as to debts arises at the time they are incurred, it clearly follows that such liability is confined to debts which exist during the time 'the fetoclc is owned. It follows, with equal certainty, that no mode of assessment should be adopted which enlarges the liability of the stockholder in the case we are considering, so as to make him liable, directly or indirectly, for debts contracted by the corporation after he has ceased to be a stockholder. And *405 when it has been ascertained that he has the right of contribution as between himself and his fellow stockholders who stand in the same relation with himself to the debts he is sought to be held for, it follows, with like certainty, that no rule of assessment which curtails that right is equitable or just. ’ This liability has already attached, and it is in respect of debts existing at the time he assigns, and for nothing else. His right of contribution against his fellow stockholders, to require them to respond to their proportional share of the same burden, is enforceable in the same action, and this right is not inferior to that of the creditor to enforce his claim. They go together. It is equally plain, thát if any of the stockholders who are alike liable with him, are assessed so that their liability is exhausted in the payment, in whole or in part, of debts, created after he has assigned his stock, then he is indirectly made to respond to debts of that character, and his right to insist upon proportionate contribution is, in like manner, impaired. As we have already found, he is, in a sense, a surety for the corporation. That is, his liability is secondary, and not primary. Resort must first be had to the corporation before he can be held. In Michigan, under a statute not dissimilar to ours as construed in Wright v. McCormack, supra, the Supreme Court (Hanson v. Donkersley, 37 Mich. 184), held a stockholder to be a surety, and that his liability is discharged by the extension of time by the creditor, and there are other authorities to the same effect. Whether or not the law, in' Ohio, goes to that length, we need not inquire. It is enough to know that his obligation is collateral and secondary, and that he has the right to call upon his co-stockholders to bear their proportion of the common liability. Is it equitable to impair that right? True, the liability created by statute is for the benefit of creditors, but it does not follow that the creditor’s interest is the only one the court should guard. All laws for the collection of debts are in the interest of creditors, but the duty of giving to the creditor the full benefit of such statutes does not warrant forgetfulness of the rights of the debtor. And in this case no reason exists for enforcing the right. of the creditor *406 given by the statute, and at the same time, ignoring the limitation placed upon that right by the construction of this court given to the statute.
After the stockholder ceases to be such, he has no voice in the management of’the corporation, and no share in the profits that may thereafter be made. The creditor continues, or may continue, to deal with the corporation, and, in doing so, may delay indefinitely the collection of his debt, even if he may not, by a new contract, extend its payment, without consent or knowledge on the part of the stockholder who has assigned, and thus continue a contingent liability against the latter which he is powerless to terminate. Under such circumstances, it does not seem inequitable to place upon the creditor, rather than upon the former stockholder, the risks incident to such delays as affected by the incurring of new debts.
We are of opinion that a stockholder who has, in good faith, sold and assigned his stock to one who becomes insolvent, is liable to creditors of the corporation, for such portion only of the debts existing while he held the stock, and remaining due, (not in excess of the amount of stock assigned) as will be equal to the proportion which the capital stock assigned by him bears to the entire capital stock held by solvent stockholders, liable in respect of the same debts, who are within the jurisdiction, to be ascertained at the time judgment is rendered.
In this view, the mode of assessment adopted by the circuit court was not an equitable one, and the judgments against the plaintiffs in error Roberts, Williamson, Ex’r of Moses E. Sayre, and Daniel Bibbee, should be modified in conformity with the conclusions herein stated.
The costs in this court may be taxed one-half to plaintiffs in error, and one-half to defendants in error.
Bradbury, J., did not sit in the case.