MERCHANTS' INSURANCE COMPANY, Respondent, *v.* BRITTON A. HILL, STOCKHOLDER, Appellant.

May 2, 1882.

1. A motion in a case is no par, of the recordt and if its terms are material, it must be incorporated in the bill of exceptions.

2. In a proceeding by motion against a stockholder, under the statute, it is not material, on appeal, to consider what were the terms of the motion, and hence, it is sufficient if the record shows that the motion was filed.

3. A charter which exempts the stockholders of the corporation from the operation of the statute imposing a "double liability," does not change the general liability of the stockholders.

4. The statute of 1865 merely changed the creditor's remedy against a stock-holder, without changing the latter's liability, is not retrospective, and is applicable to stockholders of a corporation in existence at the date of the act.

5. Where stockholders are exempted by special law, from the statutory double liability, without leaving any method of enforcing the general liability in favor of creditors, the adoption of a general provision for enforcing this liability does not derogate from the special charter exemption.

6. A proceeding by motion under the statute against a stockholder is a pro-ceeding at law, and evidence taken therein will not be reviewed on appeal.

7. A stockholder proceeded against by motion under the statute, may offset any subsisting debt due by the corporation to him.

8. A counter-claim, where there is no current account, must be adjusted be-tween the parties before it can be allowed as an offset, and cannot be allowed if barred by the statute.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Affirmed.*

N. HOLMES, for the appellant: A general statute treat-ing the subject in a general manner, and not expressly con-tradictory to the special act, shall not be considered as intended to affect the more particular and positive provi-sions of it, unless it is absolutely necessary to give the general statute such a construction, in order that its words shall have any meaning at all. — *The State ex rel.* v. *Mc-Donald*, 38 Mo. 529 ; *The State* v. *Alexander*, 23 Mo. 508 ; *The State* v. *Macon County*, 41 Mo. 458, 459 ; *The State*, v. *Insurance Co.*, 47 Mo. 149 ; *The State* v. *Fiala*, 47 Mo. 310-320. For the further and forcible reason that such a con-struction of these general laws of 1865 and 1879, as would make them apply to this special and private act, and sub-ject the stockholders of this corporation to this summary proceeding on motion, would make those laws unconstitu-tional, as being retroactive, and as depriving those stock-holders of rights and defences which they before had, and as imposing on them liabilities to which they were not subject, when they became stockholders, under the rights, privileges, and exemptions conferred on them by the special charter; and it is a settled principle that a construction which

would make an act unconstitutional will not be given to it, "unless it, in clear and express terms, admit of no other rational explanation."—*Shaw* v. *Gregoire*, 41 Mo. 415, 416; *Hope Mutual Ins. Co.* v. *Flynn*, 38 Mo. 483; *Provident Savings Instn.* v. *Bathing Rink*, 52 Mo. 557; *Fairchild* v. *Hunt*, 71 Mo. 531, 532; *Moart* v. *Minnick*, 3 N. H. 477; *Society* v. *Wheeler*, 2 Gall. 105–139. At common law, and independently of these general statutes, no action would lie by a creditor of the corporation against a stockholder, because there was no privity of contract between them, though in equity he could have a bill against all or some of the stockholders of an insolvent corporation, upon an equity worked out through the liability of the corporation to him, and of the stockholders to the corporation, for a balance of unpaid stock, by a species of subrogation, to compel them to contribute their *pro rata* shares (within the amounts owed by them) towards making up the amount of the creditor's demand against the corporation, in which an account could be taken, and claims of set-off and other equitable defences could be adjusted, and an apportionment made of the common burden among all the defendants. — *Lionberger* v. *Bank*, 10 Mo. App. 499; *Vose* v. *Grant*, 15 Mass. 505; *Spear* v. *Grant*, 16 Mass. 15; *Wood* v. *Dumme*, 3 Mason, 308; *Briggs* v. *Penniman*, 8 Cow. 387; *Hume* v. *Minyan*, 1 Car. L. J. 217; *Nathan* v. *Whitlock*, 9 Paige Ch. 152; *Mann* v. *Pentz*, 3 N. Y. 422. In this proceeding the right of the plaintiff attaches to those only who were stockholders owing an unpaid balance of stock at the time when the motion was filed or notice was given, and not to those who were stockholders owing a balance of unpaid stock at any prior time. — *McClaren* v. *Franciscus*, 43 Mo. 452. It was left open to this corporation to increase or diminish its capital stock within the limits prescribed by its charter, and the reduction made, in 1871, with the consent of all the stockholders, was binding and effectual on them and as against all

others but existing creditors. — Ang. & Ames on Corp., sect. 556; *Somerset, etc., R. Co.* v. *Cushing*, 45 Me. 524–530. The offset of the defendant, claimed against the corporation in 1872, before this plaintiff appears to have become a creditor, and acquiesced in by the corporation for seven years before this motion was filed, was a legal and valid satisfaction of the balance of his stock then remaining unpaid, both as against said corporation and against this plaintiff. — *Webber* v. *Leighton*, 8 Mo. App. 502. The plaintiff in this motion had no action at law, and no right under this statute, to hold the defendant for anything but an actual debt due and owing from the defendant to said corporation at the date of his motion for an unpaid balance of stock; and if that were fully satisfied, he was not liable otherwise for any debt of the corporation. — *Schicke* v. *Ridings*, 65 Mo. 208. Looking to the previous state of the law, it is evident that this statute did not intend to create any new right in the plaintiff, nor any new indebtedness on the part of the stockholder, but merely to give a more summary remedy, concurrent with the existing remedy in equity, but not exclusive of it, in cases arising under it, subsequent to its passage. — *Lionberger* v. *Bank*, 10 Mo. App. 499. It is quite analogous to garnishment, where the plaintiff attaches a debt due to his debtor, subject to set-off and all other legal and equitable defences, which the garnishee may have against his own creditor. — *Firebaugh* v. *Stone*, 36 Mo. 114; *Weil* v. *Tyler*, 38 Mo. 545; s. c. 43 Mo. 581; *Hannah* v. *Moberly Bank*, 67 Mo. 686.

PATTISON & CRANE, for the respondent: The motion, upon which this proceeding is based, is not made a part of the bill of exceptions. Upon the reasoning of the cases already decided by this court (*Bremen Savings Bank* v. *Allen*, and *Allen* v. *Benton*), there is nothing for this court to pass upon. — See also *Colby* v. *Tracy*, 62 Mo. 511; *The State* v. *Ware*, 69 Mo. 332. The corporation had no right to reduce its stock except in a manner that

would leave its creditors in no worse position than they were before the reduction. — *Gill* v. *Balis*, 72 Mo. 424 (followed in *Chouteau Ins. Co.* v. *Floyd*, decided at the present term); *County of Morgan* v. *Allen*, 103 U. S. 498; *Kehlor* v. *Lademann*, 11 Mo. App. 550. A change of the remedy for violation of a contract, or a change in the method of enforcing a contract, is not an impairment of its obligation. — Story on Const. (4th ed.), sect. 1385, esp. note 3 on p. 245, and notes 2 and 3 on succeeding page; *McElrath* v. *Railroad Co.*, 55 Pa. St. 189, 204. "If a statute declares that any stockholder may be recovered against by a creditor of the corporation to the extent of the balance unpaid on his stock subscription, nothing is thereby added to the stockholder's ultimate liability, but something may be added in the more direct means for its enforcement." — *Lewis* v. *St. Charles County*, 5 Mo. App. 231. See also *Walker* v. *Crain*, 17 Barb. 119, 128. The claim of appellant was one for unliquidated damages, and therefore does not constitute a set-off. Whenever such a defence is allowed a stockholder, it is allowed him on the ground that it constitutes a set-off at law.— *Webber* v. *Leighton*, 8 Mo. App. 502; *Re Whitehouse & Co.*, 9 Ch. Div. 595; *Arcade Co.* v. *Dowling*, L. R. 3 C. P. 175. If there ever was a subsisting claim by the stockholder against the corporation, it is barred by the statute of limitations.

THOMPSON, J., delivered the opinion of the court.

This was a proceeding by motion in the St. Louis Circuit Court against the appellant, Britton A. Hill, as a stockholder in the defendant corporation, for an alleged balance of unpaid stock, under section 736 of the Revised Statutes of 1879 (p. 121). Adopting the clear and accurate statement of the appellant, it appears that on the hearing of the motion the plaintiff offered evidence tending to show that the defendant corporation was chartered by the special and

private act of February 7, 1859 (Sess. Acts 1859, p 74), with "the same rights, privileges, and restrictions" as the Washington Iusurance Company, chartered by the act of March 3, 1857 (Sess. Acts 1857, p. 544), excepting only so much of section 8 of that act as declared it "a public act," and thereby excepting the new corporation out of the operation of sections 7, 13, 14, 15, 16, and 18 of Article I. of the general "corporations" act of November 23, 1855, (Rev. Stats. 1855, p. 372.) The capital stock was thereby limited to not less than $50,000, and not more than $1,000,000; but it was otherwise left open to the corporation to determine the amount.

That on the 20th of July, 1866, the defendant Hill became a subscriber for sixty-four shares of the stock of the corporation, of the par value of $100 a share, and paid up twenty-five per cent thereof in cash on subscription, and gave his stock-notes for the balance thereof, one dated the 11th of July, and three dated the 20th of July, 1866, payable on demand and subject to calls for instalments on notice when required; and that prior to the twentieth day of January, 1871, said defendant had made further payments in cash to the amount of $2,400, including all.

That on said 20th of January, 1871, the capital stock of the defendant corporation was reduced to $100,000; and that the defendant Hill's shares were reduced to thirty-seven shares of $100 a share, at par value, in place of the sixty-four shares by him subscribed, and that after such reduction he made further payments thereon in cash to the amount of $1,110, on and prior to the 27th of February, 1872, making in all $3,510 paid, leaving, according to the appellant's view of the evidence, a balance of $190 on his thirty-seven shares, at that date.

That, in 1872, the corporation ceased doing business, reinsured its risks, and proceeded to wind up its affairs; and that after that date a further call was made on the defendant Hill, which he refused to pay, saying that the cor-

poration owed him more for his professional services than he owed the company for his stock.

That the reduction was such (as testified by Mr. Conroy, attorney for the corporation), that " the capital stock of the company was reduced to $100,000, with twelve and one-half per cent paid up, and that the subscriptions were equalized on this basis, which left the defendant thirty-seven shares."

That the plaintiff obtained judgment against the defendant corporation on the 9th of May, 1878, for $5,653.80, and costs, and had execution thereon returned *nulla bona* on the 15th of February, 1879.

At the close of the plaintiffs' case, the defendant Hill asked the following instructions, which were refused, and exceptions taken : —

" 1. The court declares the law to be, that defendant's liability as a subscriber to the capital stock of the defendant in the suit, on which this motion is based, ceased by limitation before this motion was filed.

" 2. The court declares the law to be, that under the evidence in this case the defendant had paid for all stock subscribed by him in the Excelsior Insurance Company, the defendant in the principal suit, on which this motion is based, before said motion was filed."

The defendant then testified in his own behalf, that he had made the payments shown him by the plaintiff; that he had always understood that when the reduction of the stock was made in 1870, to $100,000, the prior payments made by the shareholders were to be, and were, applied by the company as made upon the reduced stock; and that on that theory he had paid for his stock in full in cash, less about $190.

He also testified, that in 1872, when the company concluded to quit taking risks, he was employed by the company to prepare a bill in equity to close its affairs, and that, with considerable labor and time, he prepared such a bill, making all its stockholders parties; that in preparing this

bill he was compelled to examine the books of the company and the pecuniary condition of the persons who had sub-scribed for the stock of the company and had not paid for the same, and found that the company could pay off all its liabilities with the assets remaining on hand, and that an assessment of ten or fifteen per cent on the stock would have met all the claims against the company, and that the reasonable value of the service so rendered by him was $500.

He also testified that the notes offered in evidence by the plaintiff, as given by him to the company, were given in payment for his subscription to its stock, and were so accepted, and that he paid all assessments whenever official notice was given him by the company; but that he never presented any bill, or made any claim against the company, for his services. It does not appear that the company ever sued him for any balance of stock thereafter.

And thereupon the court, after advisement, found that the defendant was, and is, a stockholder in such corporation, owning thirty-seven shares of stock of the par value of $100 each, and that the unpaid balance on said shares is $2,127.50, and that he is liable to the execution of the plaintiff in this amount; and ordered execution for said sum and costs.

Thereupon the defendant Hill filed his motion for a new trial, for the reasons therein specified, covering all the points intended to be raised here, which motion was overruled, and an exception taken; and the case is brought up by appeal.

The following questions are raised on this record: —

1. The respondent directs attention to the fact that the motion upon which this proceeding is based is not incorporated into the bill of exceptions; and he therefore takes the position that there is nothing for this court to pass upon. It is true that a motion in a case is no part of the record proper, and that whenever the terms of a motion become

material, the motion must be incorporated in the bill of
exceptions ; for it is not everything which the clerk of the
circuit court may choose to copy into the transcript which
thereby becomes a part of the record.   *United States* v.
*Gamble,* 10 Mo. 457 ; *The State* v. *Wall,* 15 Mo. 208 ;
*Loudon* v. *King,* 22 Mo. 336 ; *Blount* v. *Zink,* 55 Mo. 455 ;
*Corby* v. *Tracy,* 62 Mo. 512.   But this rule applies only
in cases where it is material to consider what the terms of
the motion were.   Here the bill of exceptions states that a
motion was filed by the plaintiff in this behalf against the
defendant as a stockholder in the Excelsior Insurance Com-
pany ; and this is a sufficient statement of record of the
nature of the proceeding.

2. The next point is made by the appellant, and it is, that
the stockholders of this company are, by the terms of its
charter, exempt from this summary proceeding by motion.
Recurring to the statement of facts, it will be perceived
that the corporation was created by a special charter passed
February 9, 1859.  Sess. Acts 1859, p. 74.   Section 1 of
this act provided : " That an insurance company be, and is
hereby, established in the city of St. Louis, to be known by
the name and style of the ' Excelsior Insurance Company,'
the stockholders of which are hereby declared a body cor-
porate and politic, with the same amount of capital stock
and period of existence, and with the same rights, privileges,
and restrictions as were conferred upon the Washington
Insurance Company of St. Louis by an act of the general
assembly of the state of Missouri, approved March 3,
1857, with the exception of so much of section 8 of said act
as declares the same a public act and exempts said corpora-
tion from the operation of section 18 of Article I. of the act
entitled ' An act concerning corporations,' approved Novem-
ber 23, 1855."

The provision here referred to in the charter of the
Washington Insurance Company is as follows, so far as
material : " The corporation established by this act shall

be, and the same is hereby, exempt from the operation of sections 7, 13, 14, 15, 16, and 18 of Article I. of the act entitled 'An act concerning corporations,' approved November 23, 1855; and said sections shall be deemed as repealed, so far as the same concerns the corporation hereby established." Laws 1856–7, p. 545, sect. 8.

The provisions of the act of November 23, 1855, concerning corporations, here referred to, from the terms of which the Excelsior Insurance Company was thus exempted, were embodied in the Revised Statutes of 1855, and, so far as material, were as follows : —

" The charter of every corporation that shall hereafter be granted by the legislature, shall be subject to alteration, suspension, and repeal, in the discretion of the legislature." Rev. Stats. 1855, chap. 34, sect. 7.

" In all corporations hereafter created by the legislature, unless otherwise specified in their charter, in case of deficiency of corporate property or estate liable to execution, the individual property rights and credits of every member of the co-partnership, or body politic, having a share or shares therein, shall be liable to be taken on execution, *to an additional amount* equal to that of the amount of his stock, and no more, for all debts of the corporation contracted during his ownership of such stock ; and such liability shall continue, notwithstanding any subsequent transfer of such stock, for the term of one year after the record of the transfer thereof on the books of the corporation, and for the term of six months after judgment recovered against such corporation, in any suit commenced within the year aforesaid : *Provided*, that in every such case, the officer holding the execution shall first ascertain and certify upon such execution, that he cannot find corporate property or estate." Rev. Stats. 1855, chap. 34, sect. 13.

" In such case, the officer may cause the property of such stockholder to be levied upon, by execution, in the same manner as if the same were against him individually, after

giving him forty-eight hours' previous notice of his intention, and the amount of the debt or deficiency, if he reside within the county; or, if not within the county, to his agent if he have any within the county; otherwise to the clerk or cashier, or some other officer of the corporation, unless such stockholder, his agent, or the clerk, or other officer, on demand and notice as aforesaid, shall disclose and show to the execution creditor, or the said officer, corporate property or estate, subject to execution, sufficient to satisfy said execution and all fees." Rev. Stats. 1855, chap. 34, sect. 14.

"Such creditor, after demand and notice, as mentioned in the preceding section, at his election, may have an action against any such stockholder or stockholders, on whom such demand and notice may have been served, jointly or severally, or so many of them as he may elect, to recover of him, or them, individually, the amount of his execution and costs, or of the deficiency as aforesaid, not exceeding the amount of the stock held by such stockholder or stockholders." Rev. Stats. 1855, chap. 34, sect. 15.

It will be perceived that this statute falls within that class of statutes which *create a liability* and prescribe a remedy for its enforcement. It created what was known in this state as a "double liability," and prescribed a remedy to enforce it. It related solely to this superadded liability. It had no reference to what may be called the stockholder's common-law liability — the liability which he assumes by contract, and which is generally worked out for the benefit of the creditors of the corporation by the processes furnished by courts of equity. Irrespective of this statute, every stockholder in the Excelsior Insurance Company stood liable to pay the amount which he had subscribed to the capital stock of the company, and in the event of the insolvency of the company, he stood liable to pay it to a receiver, to an assignee, or other trustee representing the creditors. It is unnecessary to cite authorities to this proposition. It has been constantly recognized by

our supreme court, by this court, and by other American courts, state and federal. It proceeds upon the well-settled rule that the capital stock of a corporation is a trust-fund for its creditors, and that, in the event of the insolvency of the corporation, a court of equity will appoint a trustee to collect and administer this fund for their benefit.

What, then, is the effect upon this liability, of the statute of 1879, under which the present proceeding is instituted? Does it operate to impose on the defendant a more onerous liability than that under which he stood by virtue of the charter of the company? Did it change any rule of evidence, so as to render it possible to charge him with liability upon a smaller *quantum* or lower grade of evidence than would have been necessary before? In short, did it come within any of the definitions of a retrospective law, or a law impairing the obligation of contracts? Or was it a law affecting merely the remedy — the mode of procedure to which a creditor of the corporation might resort, in order to enforce the liability which the defendant had assumed by his contract of subscription?

The statute would seem to have no other effect than to change the creditors' remedy from a protracted and expensive suit in equity, in which all the shareholders, so far as practicable, would have to be made parties, in which all the creditors would be beneficiaries, and in which the whole fund might be eaten up with the costs, to a direct, informal, and inexpensive proceeding against any stockholder whom the creditor might chance to find who had not paid into the capital stock of the debtor corporation the amount which he had agreed to pay in his contract of subscription. We cannot see wherein the liability of the stockholder is made more onerous, by the remedy afforded by the Revised Statutes, although it is reached and enforced more quickly, and with less expense to the creditor.

The learned counsel for the defendant suggests that his liability is rendered more onerous in this, that, indepen-

dently of the general law, his liability could only be enforced in equity, upon a bill filed against all the solvent stockholders owning unpaid balances of stock, within the jurisdiction of the court, in which proceeding he would be liable to pay his *pro rata* contribution towards making up the amount of the plaintiff's demand, and no more. Whereas, he argues that the effect of this proceeding by motion given by the general law, is to subject him to a several liability to the plaintiff for the whole amount of his unpaid stock, without giving him any remedy over against other stockholders for a contribution in respect of their shares, — the statute proceeding being against the stockholders severally, and not jointly. If this were the effect of the general law, we should not hesitate to hold that it could not operate upon the present charter without substantially impairing the rights of the shareholders of this company, and coming within the constitutional inhibition against retrospective laws, and laws impairing the obligations of contracts. But we do not think it can be held to have such an operation. The case of *Andrews* v. *Callender* (13 Pick. 484), to which the learned counsel refers as supporting this view, is certainly an unsatisfactory case. In so far as it holds that the members of a corporation who are made by statute jointly and severally liable to pay the debts of the corporation, cannot have contribution against each other for the purpose of equalizing their burdens, because the statute which creates the liability does not provide for contribution, I am free to say that I do not think it can be vindicated on sound principles. The statute there in question made the members of the corporation liable substantially as partners, and the right which partners have as among themselves, to have their common burdens equalized, would follow, on the plainest principles of justice, without the statute so providing. It has been held that a stockholder who has been compelled to pay a debt of the corporation, may maintain an action for contribution against all the stockholders, who

were such at the time of the contracting of the debt, although the stockholders are liable severally under the statute. *Aspinwall* v. *Tarrance*, 1 Lans. 381. It was so held in *Judson* v. *Rossie Galena Company* ( 9 Paige, 598), where the liability was joint and several. So it is said in another case by Denio, J. : "If a stockholder is sued to enforce his individual liability, he may resort to a suit for an account and contribution." *Garrison* v. *Howe*, 17 N. Y. 458. See also *Stewart* v. *Lay*, 45 Iowa, 614. So under statutes where the liability of the stockholders is similar to that of partners, it is said that "they should be left to such remedies as have been provided by law for the adjustment of partnership transactions. They may go into chancery for an account, and to have the claims of all parties settled upon an equitable principle." Bronson, J., in *Bailey* v. *Buckner*, 3 Hill, 188. And see *Allen* v. *Sewall*, 2 Wend. 327 ; *Moss* v. *Oakley*, 2 Hill, 269 ; *Farrow* v. *Bivings*, 13 Rich. Eq. 25.

But if the case of *Andrews* v. *Callender* (*supra*) were to be regarded as sound, it would still not be an authority for the position here contended for ; and for the very reason on which that case was decided, that the liability there in question was a statutory liability, while here we are dealing only with the liability which the principles of equity attach to the subscriber's contract. No reason has been suggested, and we can see none in the nature of things, why the giving by the legislature of the direct and inexpensive remedy by motion should be construed to deprive the shareholder thus proceeded against of his right of contribution against his fellow-shareholders. The only change which we can perceive in the nature of the remedy is this : under the proceeding in equity, the labor, delay, and perhaps the expense of securing to shareholders the equalization of their burdens as among themselves, falls upon the moving creditor, who is not benefited by it ; whereas, under the statutory remedy, it falls on the shareholder, who is benefited

by it.   Such a change of remedies, we are clear, is not so extensive as to fall within any constitutional inhibition.

The question thus seems clear upon principle ; but there are not wanting authorities in support of the conclusion at which we have arrived.   The cases of *Stanley* v. *Stanley* (26 Me. 191), and *Marcy* v. *Clark* (17 Mass. 334), which hold that it is competent for the legislature to pass a law making the private property of the stockholders of existing corporations liable to be taken in execution for debts of such corporations thereafter contracted, such liability not existing before, go much further than we go in this case.   They apply to the case of this defendant in this respect : that he became a shareholder in this corporation after the Revised Statutes of 1865, which first gave the present remedy by motion, went into effect.   These cases, however, are not well reasoned, and it is not necessary that we should commit ourselves to the doctrine which they lay down.   Other cases, though not directly in point, furnish more persuasive analogies.   Although the right of the creditors of a corporation to the security afforded by the liability under which its stockholders stand by the laws existing at the time of the contracting of his debt, is in the nature of a contract, and cannot be impaired by subsequent legislation (*Hawthorne* v. *Calef*, 2 Wall. 10) ; yet statutes which give the right to arrest and imprison a stockholder for a debt due the corporation (*Penniman's Case*, 11 R. I. 333), and statutes which drive such a creditor from a direct proceeding by suit at law against any individual stockholder to a general proceeding in equity brought by a trustee on behalf of all creditors against all stockholders (*Story* v. *Furman*, 25 N. Y. 214 ; *The Commonwealth* v. *Cochituate Bank*, 3 Allen, 42), do not impair the obligation of the corporation's contract, but affect the remedy merely, and are hence not unconstitutional.   The rule of the latter cases ought to work both ways.   If the present remedy by

motion had been the only remedy existing at the time this plaintiff contracted its debt, it would be competent, under these decisions, for the legislature to take it wholly away, and to substitute a remedy in equity; and the plaintiff could not complain, for he would have a substantive, though not as cheap and speedy a remedy left. So this defendant cannot complain that the remedy against him is so far changed that he must seek his remedy for contribution at his own suit and at his own expense, and that the creditor is not bound, as before, to extend to him his remedy for contribution at the same time that he enforces his own right.

2. The appellant also argues that the provision of the Revised Statutes under which this proceeding is instituted (1 Rev. Stats., sect. 736), being a general law, is not to be construed as applying to stockholders in corporations which, like the present, were created by special statutes previously enacted; and in support of this view he appeals to the well understood principle, that a general statute treating a subject in a general manner and not expressly contradicting a special statute, previously enacted, is not construed as affecting the more particular and positive provisions of the special statute, unless it is necessary so to construe it in order that its language may have any meaning at all. The rule is not, perhaps, as strong as the learned counsel for the appellant has here stated it. It proceeds upon the maxim which obtains in the construction of all written instruments and laws, *generalia specialibus non derogant*, and is founded upon the idea that the legislature, having given its providential attention to a special subject, is not to be understood by the subsequent enacting of a general law relating to all similar subjects, as intending to abrogate what it has thus specially provided for. *The State ex rel.* v. *Wesleyan Cemetery Assn.*, 11 Mo. App. 560, 570. We are disposed to give full effect to this principle in the interpretation of our legislation. In view of this principle, we decided some

time since, upon an oral motion, that graduates of the law school of the State University and of the law school of the Washington University of St. Louis, are entitled to be admitted to practice in the courts of this state upon an exhibition of their diplomas, notwithstanding the general provision of the Revised Statutes of 1879, which requires an examination of all candidates for admittance to the bar. We did not consider that the legislature, in enacting these general provisions, intended to repeal, without mentioning it, a previous statute enacted with special reference to those law schools, providing that their diplomas should entitle their graduates to admission to practice in the courts of this state. We understand that the supreme court, upon a similar motion, took the same view. We think, however, that it will appear, from a consideration of the subject before us, that this is not a case for the application of this principle. Here the legislature has chartered a corporation by a special law, and has exempted its stockholders from the superadded or double liability provided for by a general law existing at the time, but it has not provided any special remedy or mode of procedure for enforcing, on behalf of creditors, the general liability which the stockholders of this corporation would assume by virtue of their contracts of subscription. The provisions of the Revised Statutes of 1879, upon which this proceeding is founded, do not, therefore, derogate from anything which is contained in the charter of the Excelsior Insurance Company. Moreover, it should be considered that the statute under which this proceeding is instituted (1 Rev. Stats., sect. 736) is couched in the broadest possible general terms. It recites: "If any *execution* shall have been issued against any corporation," etc. Now, when it is considered that when this statute was enacted there existed in this state a very great number of corporations created by special acts of the legislature, having numerous stockholders and very great aggregation of capital, it can scarcely be

supposed that the legislature intended to limit the remedy there provided for, to such corporations as had been, or might thereafter be, formed under the general law relating to corporations. An examination of the reported decisions in which proceedings against stockholders by motion have been upheld, will show that several of them have been, in cases of corporations created by special charters; and this would indicate that the understanding of the profession has been contrary to the appellant's position.

3. It remains to consider the defence of payment and set-off interposed by Mr. Hill. We may premise that this proceeding is so far in the nature of a proceeding at law, that the findings of facts made by the circuit court will be deemed conclusive in this court, if the bill of exceptions shows that there was substantial evidence to support such findings. This was no doubt the understanding of the appellant when he drew his bill of exceptions; for it does not purport to set out the testimony in hæc verba, but it merely recites that there was testimony tending to show certain facts, as a bill of exceptions should do in cases at law. We could not be expected, upon such a presentation of the evidence, to consider the questions of fact de novo, as we do in an appeal in equity.

The circuit court has found that Mr. Hill was, and is, a stockholder in the Excelsior Insurance Company, owning thirty-seven shares of stock of the par value of $100 each; that the unpaid balance on said shares is $2,127.50, and execution against him was awarded for this amount. The bill of exceptions discloses substantial evidence to support this finding. This will be seen by recurring to the statement of facts which we have already given. We may concede most of the positions as to the law, taken by the counsel for the appellant with reference to this question of payment, — that the right of the plaintiff attaches only to those who were stockholders owing an unpaid balance at

the time when this motion was filed (*McClaren* v. *Franciscus*, 43 Mo. 452), and that the corporation had power to reduce its capital stock to $100,000, in the year 1871, there being no evidence in the record that it owed any debts at that time. But we cannot concede the legal conclusion that this reduction of capital stock operated as a failure of consideration *pro tanto* on the original subscriptions, and on the stock-notes given on the unpaid balance. The evidence, as preserved in the bill of exceptions, is very meagre as to the terms of this reduction, — what led to it, what was the volume of the capital stock prior to it, and how a capital stock, twenty-five per cent of which had been paid up, came to be reduced to a smaller stock with but twelve and a half per cent paid up. But the substantial evidence is, that this was the fact; and the inference is, that it was upon some scheme of reorganization devised to meet the needs of the company, or possibly to help it out of embarrassments. It is sufficient for us to see that the finding of the circuit court was supported by substantial evidence, to the effect that in 1871 the capital stock was reduced to the aggregate of $100,000; that the scheme of readjustment was such that Mr. Hill became the holder and owner of thirty-seven shares of the stock as reduced, of the par value of $100 each; that of the value of these shares but twelve and a half per cent was deemed to have been paid, and that he stood liable to pay the remaining eighty-seven and a half per cent when it should be called for by the directors, or otherwise in accordance with law; that he thereafter paid, upon one call, ten per cent of the value of these shares, or $370, and upon another call, twenty per cent, or $740, whereby he had paid in all, prior to the time of this motion, forty-two and a half per cent of the $3,700, which represented the aggregrate value of these shares, and stood liable to pay the remaining fifty-seven and a half per cent, which would amount to $2,127.50, the amount for which the circuit court awarded execution against him. The conclusion of

the circuit court was therefore supported by substantial evidence and was right, unless the court erred in refusing to allow Mr. Hill's claim of set-off. The nature of this claim is fully stated in the early part of this opinion ; and from the statement there given, it sufficiently appears that, at the time when this motion was filed, it was barred by the statute of limitations of five years. It was not, and is not, claimed to have been a case of mutual running accounts, and nothing is shown to take it out of the operation of the statute. The position of the learned counsel for the appellant, that the amount due by the defendant corporation to Mr. Hill operated as a valid satisfaction of his liability as a shareholder, finds no support in the case cited in support of it. *Webber* v. *Leighton*, 8 Mo. App. 502. That case simply decides that a stockholder in a corporation proceeded against by a creditor by motion, as in this case, may set off against his liability any debt which is due by the corporation to him ; but the debt there referred to is a debt which is alive and subsisting at the time when the motion is made, and not a claim which has been extinguished by operation of the statute of limitations. It has never been the understanding of the courts with reference to the operation of statutes of limitations upon counter-demands, which opposing parties litigant may have had against each other, that such demands offset and adjust themselves by their own vigor, or by operation of law, without any accounting or settlement had between the parties. The only exception to this is in the case of merchants' accounts, or mutual, open, and current accounts, under our statute (1 Rev. Stats., sect. 3223), which this is not claimed to be, and clearly is not. So that if A. sues B. upon a note made by B. seven years ago, B. cannot defeat A.'s recovery by pleading and proving that six years ago A. became indebted to him upon an account in a greater sum than the amount of the note. Ang. on Lim. (6th ed.), sects. 148, 149. We make these statements of doctrine for the purpose of making our posi-

tion clear, and not as intimating that the learned counsel for the appellant has urged anything in opposition to principles so well understood.

The case here is conducted without formal pleadings. If Mr. Hill's counter-claim had been a good counter-claim, it would have been allowed merely upon evidence setting it up, without requiring him to plead it. That it appears on the evidence setting it up to have been barred by limitation at the date of the motion, is as fatal to it as though the statute of limitations had been pleaded.

If we are right in these views, it results that the judgment of the circuit court must be affirmed. It is so ordered. All the judges concur.