STINEBAKER et al., Appellants, v. NATIONAL RESTAURANT COMPANY, Defendant, REINHARDT, Respondent.

St. Louis Court of Appeals, October 20, 1908.

1. STOCK AND STOCKHOLDERS: Liability of Stockholder: Offset. The holder of unpaid shares of stock in a corporation against whom a judgment creditor of a corporation proceeds by motion under the statute, may set up as an offset the debt the corporation owes him, provided the debt accrued prior to the return *nulla bona* of the execution against the company.

2. ————:————:————. In a summary proceeding by motion of a judgment creditor against a stockholder who had not paid for his shares, where the stockholder had paid debts of the corporation with the knowledge and approval of its president, was credited with the amount on the corporation books and the corporation gave its notes to him for the amounts paid, this was sufficient evidence to justify a finding that by advancing the money a debt was created in favor of said stockholder and against the corporation.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Robt. F. Walker* and *Walton & Raithel* for appellants.

*Lee A. Hall* for respondent John W. Reinhardt.

(1)　It is a good defense to a motion against a stockholder by a creditor that the stock holder has already paid corporate debts to an amount equal to that for which he is liable under the statute, existing as a claim in his  favor prior to *nulla bona* return. 26 Am. and Eng. Ency. Law (2 Ed.), 1026; Webber v. Leighton, 8 Mo. App. 502; Bank v. Bank, 130 Mo. 169; Coquard v. Pendergast, 35 Mo. App. 243; Mansville v. Roever, 11 Mo. App. 321.　(2)　A stockholder has the same right with a stranger to become a creditor of the company. Jerman v. Benton, 79 Mo. 162.

STATEMENT.—This appeal was taken from an order overruling a motion for an execution against respondent Reinhardt as a shareholder in the National Restaurant Company.　The motion was filed after judgment had been given in favor of appellants for $4,250 in an action by them against the company and after return *nulla bona* of an execution on the judgment.　Reinhardt held shares in the company of the par value of one hundred dollars each, and it is contended he was liable on these shares because he had not paid their face value to the company.　The entire capital stock was $30,-000 par value, divided into three hundred shares, of which J. C. Hopkins, president of the company, held one hundred and sixty-five shares, Reinhardt, the secretary and treasurer, one hundred, and Charles Blanchard, ten.　It thus appears that two hundred and seventy-five shares of the stock were held by these three men; but it was not shown who held the remaining twenty-five shares.　The company was organized to take over a leasehold on certain premises near the site of the Louisiana Purchase Exposition or World's Fair, in 1904, and, conduct a restaurant on them.　The lease was

made by appellants Stinebaker and Early to J. C. Hopkins for a term running from April 15, 1904, to December 31, 1904, and for a rental of $20,000, of which Reinhardt guaranteed the payment of $15,000. Hopkins took possession of the premises and retained it until August, 1904, when, with the consent of the lessors, he transferred possession to the National Restaurant Company, assigned to it all his interest in the leasehold, and said company, the evidence shows, assumed Hopkins' liability for the whole rent and also Reinhardt's liability on his guaranty for a portion of it; it is not definitely shown when the company was organized, or that its incorporation and occupation of the leasehold was contemplated at the time the lease was given to Hopkins; but there are circumstances going to show the company conducted business on the leased premises from the first. A resolution of the board of directors was adopted which treated the capital stock as fully paid by the leasehold; that is to say, the lease on the premises was treated as of the value of thirty thousand dollars and the stock issued as fully paid. What the actual value of the lease was, and whether it was greater or less than this sum, there is no evidence to prove; an important circumstance, we think. Notwithstanding said resolution of the directors, Blanchard paid in cash twelve hundred dollars on accounts owed by the company for goods furnished to it, in payment for his ten shares of stock, and there was from the first an understanding among the principal shareholders named *supra*, that Reinhardt should advance $5,000 in cash to pay for supplies to the company and its running expenses, in part payment for his one hundred shares. He advanced money from time to time as the exigencies of business required and to keep the company from being sued, until he had paid liabilities and bills of the company to the amount not of five thousand dollars, but of $10,-430.39. For some four or five thousand dollars of these

payments notes were given him in the name of the company, but he never realized anything on those obligations. Besides the above amount Reinhardt paid the lessors on account of his guaranty for rent $12,093; and as the company had assumed his guaranty, it follows his payments on account of the company's obligations amounted to $22,523.39.

At the instance of the plaintiff the court declared the law to be that though Reinhardt guaranteed the payment of fifteen thousand dollars on the rent and paid on said guaranty the sum of twelve thousand and ninety-three dollars, he could not set off said sum against any indebtedness he owed as the holder of unpaid stock, unless it appeared the Restaurant Company had recognized or assented to his payment as stockholder of said rental, or the payment was made in such circumstances as to constitute him a creditor of the company for the amount; that though Reinhardt may have paid debts of the company to the amount of five thousand dollars or more, unless it was shown the company recognized and assented to such payments, Reinhardt could not set off the amount of them against any balance he owed for his stock. At the request of defendant the court declared that if Reinhardt paid five thousand dollars or more on account of the company, under an understanding and arrangement with its president and general manager that these payments were to constitute payment on account of defendant's shares of stock, and if the court found the money was used as aforesaid (i. e., to settle the debts of the company) though no formal action was taken by the board of directors authorizing this arrangement, such payment or payments were made on his stock; that if Reinhardt became the guarantor of Hopkins, the original lessor, for fifteen thousand dollars of the rent, and the restaurant company afterwards accepted an assignment of the rights and assumed the liabilities of Hopkins under said lease, and entered into

possession and control of the premises, and thereafter Reinhardt paid any sum on account of his guaranty, before execution had issued in favor of plaintiffs in this case and been returned *nulla bona,* and Reinhardt was not reimbursed for such payments, the same constituted a valid claim against the company, which Reinhardt was entitled to offset against the judgment of plaintiffs against the company.

GOODE, J. (after stating the facts.) —We might dispose of this appeal by affirming the judgment for lack of evidence to prove the leasehold was worth less than the value placed on it by the company. We cannot take judicial notice on this question one way or the other. But as the record is meagre and the court below did not proceed on the theory the stock was unpaid, there may have been some testimony of the fact, or it may have been conceded. Therefore it will be more satisfactory if we consider the appeal on the merits.

We can see nothing favorable to the plaintiffs in any aspect of the case. Although the board of directors passed a resolution which treated the leasehold as payment in full of the capital stock, it appears to have been understood from the first respondent should advance five thousand dollars as a payment on his stock. There is an inconsistency between what the board resolved and this arrangement, but business men frequently act irregularly in these matters. It is certain respondent agreed to pay and paid five thousand dollars in cash on his stock, thereby leaving only five thousand dollars unpaid. But to pay rent and other expenses and buy supplies, he advanced for the company seventeen thousand dollars in addition to the five thousand dollars. These payments were made to keep the company alive and prevent suits against it, and while the company was still a going concern; and it is not disputed respondent may use them as a bar to plaintiffs' recovery in this proceed-

ing if they occurred under circumstances which made him a creditor of the company. The question of the right of a holder of unpaid shares against whom a judgment creditor of the company proceeds by motion under the statute, to avail himself by way of offset, of a debt the company owes him which had accrued prior to the return *nulla bona* of the execution against the company, has been determined in favor of the shareholder in several cases in this State. [Webber v. Leighton, 8 Mo. App. 502; Manville v. Roever, 11 Mo. App. 317; Insurance Co. v. Hill, 12 Mo. App. 148; Jerman v. Benton, 79 Mo. 148.] The reasoning on which the offset is allowed is expounded in the opinion in Jerman v. Benton, which may be read with benefit, as also may the opinions in Briggs v. Penniman, 8 Cow. 397, and Garrison v. Howe, 17 N. Y. 458. In the present case appellants insist the money paid by respondent for the benefit of the company was advanced voluntarily; wherefore he did not become a creditor of the company and hence has no demand to set off against plaintiffs' judgment. It is true the board of directors did not, by motion or resolution, formally request respondent to make the payments; but the testimony shows they were essential to the continuance of the company's business and, indeed, the capital on which it subsisted; that they were made with the knowledge and approval of the president, were in each instance entered as a credit in favor of respondent on the books of the company, and the company so far assented to them and recognized them as creating obligations against it in his favor, that it executed notes to him on account of them for more than four thousand dollars; that is to say, for about all the money he advanced except the five thousand dollars paid on his shares and the twelve thousand dollars paid on his guaranty for rent. We consider the evidence was ample to justify the court below in finding the cash furnished by respondent above what was to be credited on his

stock, was advanced with the knowledge and consent of the managing officers of the company and was treated by them as creating an indebtedness of the company to respondent.

The judgment is affirmed. All concur.